IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION / | No. M 07-1827 SI<br>MDL No. 1827 |
| This Order Relates To: | No. C 11-0058 SI |
| COSTCO WHOLESALE CORPORATION,<br>Plaintiff,<br>v.<br>AU OPTRONICS CORPORATION, *et al.*,<br>Defendants. / | **ORDER GRANTING IN PART DEFENDANTS' JOINT MOTION TO DISMISS COMPLAINT** |

Now before the Court is defendants' joint motion to dismiss the complaint of plaintiff Costco Wholesale Corporation ("Costco"). Having considered the arguments presented in the moving papers, the Court hereby GRANTS IN PART defendants' motion.

**BACKGROUND**

Costco filed this antitrust action on November 30, 2010, alleging that defendants had "conspired . . . for the purpose and effect of raising and maintaining prices and reducing capacity and output for Liquid Crystal Display (LCD) panels, and products containing such panels, sold to Costco and others." Compl. at ¶1. Costco's complaint includes claims under the Sherman Act, 15 U.S.C. § 1, and the antitrust laws of Washington, California, Arizona, Illinois, and Florida. FAC at ¶¶179-208. It names

as defendants entities from ten corporate families: AU Optronics[1]; Chi Mei[2]; Chunghwa Pictures Tubes[3]; Epson[4]; Hannstar[5]; Hitachi[6]; LG[7]; Samsung[8]; Sharp[9]; and Toshiba.[10] FAC at ¶¶8-46.

On May 24, 2011, defendants filed a joint motion to dismiss Costco's complaint under Federal Rule of Civil Procedure 12(b)(6). Defendant's motion raises four grounds for dismissal. First, defendants bring due process and choice-of-law challenges to Costco's state-law antitrust claims. Second, defendants assert that Costco's definition of "LCD Products" is too unclear to satisfy notice pleading standards. Third, defendants argue that Costco's complaint fails to provide an adequate description of the involvement of each defendant in the price-fixing conspiracy. Finally, defendants claim that Costco has failed to allege adequate facts to support its claims of a conspiracy to fix prices for super-twist nematic liquid crystal display ("STN-LCD") panels.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint that fails to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

---

[1] AU Optronics Corporation and AU Optronics Corporation America, Inc.

[2] Chi Mei Corporation, Chi Mei Optoelectronics Corporation, CMO Japan Co., Ltd., Chi Mei Optoelectronics USA, Inc., Nexgen Mediatech, Inc., and Nexgen Mediatech USA, Inc.

[3] Chunghwa Picture Tubes, Ltd. and Tatung Company of America, Inc.

[4] Epson Imaging Devices Corporation and Epson Electronics America, Inc.

[5] HannStar Display Corporation.

[6] Hitachi, Ltd., Hitachi Displays, Ltd., and Hitachi Electronic Devices (USA), Inc.

[7] LG Display Co., Ltd., LG Electronics, Inc., Koninklijke Philips Electronics N.V., LG Display America, Inc., LG Electronics U.S.A., Inc., and Philips Electronics North America Corp.

[8] Samsung Electronics Company, Ltd., Samsung Electronics America, Inc., and Samsung Semiconductor, Inc.

[9] Sharp Corporation and Sharp Electronics Corporation.

[10] Toshiba Corporation, Toshiba America Electronics Components, Inc., Toshiba America Information Systems, Inc., and Toshiba Mobile Display Co.

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief may be granted, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## DISCUSSION

As mentioned above, defendants' motion challenges four aspects of Costco's complaint: (1) Costco's state-law antitrust claims; (2) Costco's use of "LCD Products" to refer to a variety of LCD technologies; (3) Costco's use of "group pleading"; and (4) Costco's allegations of a conspiracy to fix prices of STN-LCD panels.

### I. State Law Claims

Defendants argue that Costco's state-law claims must be dismissed. They assert that Costco's claims run afoul of the Due Process Clause, and that any surviving claims must be brought under Washington law.

#### A. Due Process

Costco's complaint includes claims under the antitrust laws of Washington, California, Arizona, Illinois, and Florida. Defendants argue that Costco has not adequately alleged that it made purchases in these states, and that due process therefore forbids application of those states' laws.

Before a court may apply a particular state's law to a cause of action, it must ensure that application of that law would comport with the Due Process Clause of the United States Constitution.

3

In undertaking this inquiry, the Court must examine "the contacts of the State, whose law [is to be] applied, with the parties and with the occurrence or transaction giving rise to the litigation." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 308 (1981). Only if the state has a "significant contact or significant aggregation of contacts, creating state interests, with the parties and the occurrence or transaction" may the law of that state be applied. *Id.*; *see also Phillips Petroleum v. Shutts*, 472 U.S. 797, 821-22 (1985) (Due Process requires a "significant contact or significant aggregation of contacts" between the plaintiff's claims and the state at issue).

On multiple occasions, this Court has addressed the question of what state's law may apply to a plaintiff's claim in this MDL. *See*, *e.g.*, Order Granting Defendants' Joint Motion to Dismiss, Master Docket No. 1822 (June 28, 2010) ("Motorola Order"); Order Granting Defendants' Joint Motion to Dismiss and Granting Plaintiffs Leave to Amend, Master Docket No. 1823 (June 28, 2010) ("AT&T Order"); Order Granting Defendants' Joint Motion to Dismiss and Granting Philips Electronics North America Corporation's Motion to Dismiss; Granting Plaintiffs Leave to Amend, Master Docket No. 1824 (June 28, 2010) ("Nokia Order"). In each instance, the Court has held that "in order to invoke the various state laws at issue, [plaintiff] must be able to allege that 'the occurrence or transaction giving rise to the litigation' – which is [plaintiff's] purchase of allegedly price-fixed goods – occurred in the various states." Motorola Order at 12; AT&T Order at 5; Nokia Order at 6.

Costco's complaint does not contain detailed allegations about its purchases. The entirety of Costco's purchasing allegations are contained in the following two paragraphs of its complaint:

> 6. Costco purchased in the United States large numbers of LCD Products manufactured by Defendants, their co-conspirators, and others. Costco's negotiations for the purchase of LCD Products took place primarily in the United States and were controlled from the company's headquarters in Washington. Costco purchase orders for LCD Products were created in and issued from regional offices located in multiple states including Washington, California, Illinois, Texas, Virginia, and Georgia. All invoices were sent to Costco in Washington. Costco's Consumer Electronics buying department in Washington was also responsible for selecting vendors and product lines with respect to LCD Products.
>
> 7. Costco received LCD Products at distribution centers located in multiple states including Washington, California, Illinois, Arizona, Utah, Texas, New Jersey, Georgia, and Florida.

Compl., ¶¶6-7. Thus, Costco does not allege that purchases were made in Arizona or Florida, only that

it received deliveries there.

Costco argues the delivery of LCD products to Arizona and Florida constitutes a "significant contact" that permits suit under Arizona and Florida law. The Court disagrees. Costco's injury occurred when it agreed to pay an inflated price for LCD products. Thus, the ultimate destination of the panels does not have any part in Costco's antitrust injury or in its state-law claims. *See*, *e.g.*, *Pecover v. Electronic Arts Inc.*, 633 F. Supp. 2d 976, 984 (N.D. Cal. 2009); *In re Graphics Processing Units Antitrust Litig. ("GPU")*, 527 F. Supp. 2d 1011, 1027-29 (N.D. Cal. 2007); *cf.* Order Denying Defendants' Joint Motion to Dismiss the Second Amended Motorola Complaint, Master Docket No. 2602 (March 28, 2011) (finding that binding price agreement negotiated in United States gave rise to injury when foreign corporations paid inflated prices abroad). Accordingly, the Court finds that Costco may not bring claims under the laws of the states where it has alleged only that it received goods.

The Court agrees with Costco, however, that the issuance of purchase orders may be a sufficiently significant contact to justify application of a state's law. Accordingly, the Court GRANTS defendants' motion and DISMISSES Costco's claims under Florida and Arizona law, and DENIES defendants' motion as to Costco's claims under the laws of Washington, California, and Illinois.

### B. Choice of Law

Defendants also bring a choice-of-law challenge to Costco's state-law claims, arguing that only Washington law governs those claims. Costco originally filed its complaint in the Western District of Washington, and both parties agree that Washington's choice-of-law rules apply to Costco's complaint. *See Paulsen v. CNF, Inc.*, 559 F.3d 1061, 1080 (9th Cir. 2009) ("In a federal question action that involves supplemental jurisdiction over state law claims, we apply the choice of law rules of the forum state . . . ."); *Ferens v. John Deere Co.*, 494 U.S. 516, 519 (1990) ("[T]he transferee court must follow the choice-of-law rules that prevailed in the transferor court.").

Washington uses a "bifurcated approach" to dealing with choice-of-law issues. *See Fields v. Legacy Health System*, 413 F.3d 943, 951 (9th Cir. 2005). Under this approach, a court first makes a threshold determination whether there is an actual conflict between Washington law and that of the other state. *Rice v. Dow Chem. Co.*, 875 P.2d 1213, 1216 (Wash. 1994). If no material conflict exists

5

between the laws or interests of Washington and the other state, the court applies Washington law. *Rice*, 875 P.2d at 1216. If there is a conflict, the court proceeds to the next step of the analysis and applies Washington's choice-of-law test. *Rice*, 875 P.2d at 1217.

The Court agrees with defendants that there is a conflict between Washington law and the laws of California and Illinois. Washington does not allow indirect purchasers to recover under its antitrust laws, whereas California and Illinois both permit indirect purchasers to bring suit. *Compare Blewett v. Abbott Laboratories*, 938 P.2d 842, 844 (Wash. App. 1997) ("[I]ndirect purchasers are not 'injured' by anti-competitive activity and therefore lack standing to sue under RCW 19.86.090.") *with* Cal. Bus. & Prof. Code § 16750 (permitting suit "by any person who is injured in his or her business or property by reason of anything forbidden or declared unlawful by this chapter, regardless of whether such injured person dealt directly or indirectly with the defendant") *and* 740 ILCS 10/7(2) ("No provision of this Act shall deny any person who is an indirect purchaser the right to sue for damages.").

Because there is a conflict, this Court must apply Washington's choice-of-law rules. Washington follows the approach of the Restatement (Second) of Conflict of Laws § 145 (1971) for determining what substantive law should apply in tort cases. *Rice*, 875 P.2d at 1217; *see also Fields*, 413 F.3d at 952. Under the Restatement, a court should consider the following contacts to determine which state has "the most significant relationship" to the case: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. Restatement (Second) of Conflict of Laws § 145. The "approach is not merely to count contacts, but rather to consider which contacts are most significant and to determine where these contacts are found." *Johnson v. Spider Staging Corp.*, 555 P.2d 997, 1000 (Wash. 1976).

The Court finds that, as the complaint is currently written, these factors weigh in favor of Washington law. Costco's injury – it's overpayment for LCD products – occurred in Washington, the state in which Costco paid its invoices. In addition, Costco is headquartered in Washington, and, according to the allegations in the complaint, the relationship between the parties was centered in Washington. Compl. at ¶6 ("Costco's negotiations for the purchase of LCD Products took place

6

primarily in the United States and were controlled from the company's headquarters in Washington.").

Compared to these contacts, the contacts Costco claims have with California and Illinois are less substantial. The most significant non-Washington contact is the fact that many of the defendants have a presence in California. *See*, *e.g.*, Compl. at ¶¶8-46. California clearly has an interest in regulating the anticompetitive conduct that occurred within its borders. Further, orders for LCD products originated from both California and Illinois, and thus Costco's injury is traceable to both those states.

While these contacts are not insubstantial, the facts that Costco is located in Washington, that Costco was injured in Washington, and that the relationship between the parties was centered in Washington lead the Court to conclude that Washington law governs Costco's claims. Nevertheless, because it is a close question and this case is still at the pleading stage, Costco may amend its complaint to include any additional facts it believes support the application of California or Illinois law to its claims.

Accordingly, the Court GRANTS defendants' motion and DISMISSES Costco's claims under the laws of California and Illinois. Costco may file an amended complaint with additional allegations concerning its choice-of-law theories before **September 30, 2011.**

## II. Definition of "LCD Products"

Defendants next argue that the definition of "LCD products" used in Costco's complaint is too ambiguous to provide them with notice of Costco's claims. Defendants complain that Costco's definition of "LCD Products" includes both LCD panels and products containing LCD panels. Thus, they argue that they cannot be sure what products are covered by Costco's complaint. Defendants also complain that Costco has not identified from whom it made its purchases, leaving defendants wondering whether Costco brings suit as a direct purchaser, indirect purchaser, or both.

The Court finds that Costco's complaint meets the pleading requirements of the Federal Rules of Civil Procedure. Costco alleges that defendants conspired to fix prices of LCD panels, which caused Costco to pay more for products containing LCD panels than it otherwise would have. While broad, Costco's definition of "LCD Products" is not so vague as to prevent defendants from having "fair notice" of the claims against them.

7

1          Further, defendants have cited this Court to no authority for their assertion that Costco's complaint must identify both the type of products it purchased as well as the sources it purchased those products from. Costco's complaint adequately gives defendants notice of the grounds for its requested relief. Costco need not specify the source or quantity of its purchases at this point in the litigation; such matters are best left to the discovery process.

### III.   Adequacy of Group Pleading

Defendants claim that Costco's complaint should be dismissed because it does not allege facts particular to each defendant. They argue that the complaint "groups all corporate family members together and refers to them collectively. It asserts that corporate families acted as one in all respects." Motion at 13; *see also*, *e.g.*, FAC at ¶10 ("Defendants AU Optronics Corporation and AU America are sometimes collectively referred to as 'AU Optronics.'"); FAC at ¶¶17, 20, 27, 34, 38, 41, 45.

This Court has previously evaluated a similar challenge to "group pleading" allegations in this multi-district litigation. In *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179 (N.D. Cal. 2009), the Court found that the direct-purchaser plaintiffs and the indirect-purchaser plaintiffs had both stated valid claims against defendants, despite their use of group pleading. *Id.* at 1184.

Costco's complaint, filed well after the Court issued the above order, bears a predictable resemblance to the direct- and indirect-purchaser complaints. The complaint alleges that the conspiracy was organized at the highest level of the defendant organizations and carried out by both executives and subordinate employees. Compl. at ¶81; *see also In re TFT LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d at 1184-85. The complaint alleges that the conspiracy was implemented by subsidiaries and distributors within a corporate family, and that "[i]ndividual participants entered into agreements on behalf of, and reported these meetings and discussions to, their respective corporate families." Compl. at ¶50; *In re TFT LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d at 1184-85. Costco also alleges that "the individual participants in conspiratorial meetings and discussions did not always know the corporate affiliation of their counterparts, nor did they distinguish between the entities within a corporate family." Compl. at ¶49; *In re TFT LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d at 1184-85. The complaint also includes detail regarding the manner in which each corporate family participated

in the conspiracy. Compl. at ¶¶80-105.

The Court finds that the allegations in Costco's complaint are sufficient to satisfy *Twombly*. Accordingly, it DENIES defendants' motion to dismiss based on Costco's use of group pleading.

**IV.     Allegations of STN-LCD Conspiracy**

Finally, defendants challenge the adequacy of Costco's allegations of a conspiracy to fix prices of both color and monochrome super-twist nematic liquid crystal display panels (collectively, "STN-LCD" panels). Costco's complaint includes a brief, five-paragraph section that contains allegations regarding a conspiracy to fix prices of STN-LCD panels. Compl. at ¶¶106-110. It alleges that the conspiracy "included agreements to raise and maintain prices of both TFT-LCD and STN-LCD panels," and that the defendants "engaged in bilateral discussions in which they exchanged information about STN-LCD pricing, shipments, and production." Compl. at ¶ 106. Further, the complaint alleges that, during the conspiracy period, "TFT-LCD Panels and STN-LCD were close substitutes for each other" such that "[p]urchasers of LCD Panels often switched their purchases from TFT-LCD panels to STN-LCD panels in response to changes in the relative prices of TFT-LCD panels and STN-LCD panels." *Id.* at ¶107-108. Thus, the complaint concludes that "[t]he conspiracy's success in inflating TFT-LCD panel prices also inflated STN-LCD prices, and vice-versa." *Id.* at ¶110.

This Court previously dismissed the complaints of Nokia, Motorola, and AT&T Mobility to the extent they attempted to include claims based upon the purchase of STN-LCD panels. *See* Motorola Order at 13-14; AT&T Order at 5-7; Nokia Order at 6-8. However, the complaints addressed in those orders included no factual allegations specific to STN-LCD panels. Instead, the complaints relied solely upon the existence of a conspiracy in the TFT-LCD market to infer a conspiracy in the STN-LCD market.

Although a close question, the Court finds Costco's allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Costco's complaint alleges that defendants held bilateral discussions "between sales and marketing employees in the form of telephone calls, emails, and instant messages. The information gained in these communications was then shared with supervisors . . . ." Compl. at ¶106. Further, the complaint alleges

9

that TFT-LCD and STN-LCD were closely related technologies that could be substituted for one another. *Id.* at ¶107. In light of the factual allegations in Costco's complaint, as well as the guilty pleas of many defendants for conspiring to fix prices of TFT-LCD panels, Costco's allegations that the conspiracy encompassed STN-LCD products are plausible on their face. Accordingly, the Court DENIES defendants' motion to dismiss on this ground.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART defendants' motion to dismiss plaintiffs' complaint. Costco may file an amended complaint before **September 30, 2011**. Docket No. 19 in 11-0058; Docket No. 2808 in 07-1827.

**IT IS SO ORDERED.**

Dated: August 29, 2011

SUSAN ILLSTON
United States District Judge