IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | No. M 07-1827 SI<br>MDL No. 1827 |
| / | |
| This Order Relates To: | No. C 11-0058 SI |
| COSTCO WHOLESALE CORPORATION, | **ORDER GRANTING DEFENDANTS' JOINT MOTION TO DISMISS IN PART AMENDED COMPLAINT** |
| Plaintiff, | |
| v. | |
| AU OPTRONICS CORPORATION, *et al.*, | |
| Defendants. | |
| / | |

Currently before the Court is defendants' second motion to dismiss in part the complaint of plaintiff Costco Wholesale Corporation ("Costco"). In its order on defendants' original motion to dismiss, this Court held that Washington law applied to Costco's suit. *See* Order Granting in Part Defendants' Joint Motion to Dismiss Complaint, Master Docket No. 3396 (August 29, 2011) ("Costco Order"). In response, Costco filed an amended complaint, adding new allegations to support its Illinois- and California-law causes of action. Defendants again seek dismissal of these claims. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter suitable for disposition without oral argument and therefore VACATES the hearing currently scheduled for December 2, 2011. Having considered the parties' papers, and for good cause appearing, the Court hereby GRANTS defendants' motion.[1]

As set forth in Costco's amended complaint, Costco is a Washington corporation headquartered

---

[1] The Court GRANTS defendants' unopposed request for judicial notice and DENIES defendants' motion to strike as moot.

in Washington. Its purchasing process is largely controlled by its headquarters, which selects the products Costco stores carry. Am. Compl. at ¶7 ("[T]he basic choice of vendors was made from the company's headquarters in Washington."); *see also* Compl. at ¶6 ("Costco's negotiations for the purchase of LCD Products . . . were controlled from the company's headquarters in Washington."). Regional offices decide on the amount of a given product their stores need. Am. Compl. at ¶7 ("Decisions among approved vendors and as to volumes to purchase were made in, and Costco purchase orders for LCD Products were created in and issued from, regional offices located in multiple states . . ."). The final invoices, however, are billed to and paid from Costco's headquarters in Washington. *Id.*

Consistent with its longstanding view that the most significant transaction in a price-fixing case "is the plaintiff's purchase of an allegedly price-fixed good," Order Granting Defendants' Joint Motion to Dismiss, Master Docket No. 1822, at 11 (June 28, 2010) ("Motorola Order), this Court held that Costco's purchasing process warranted application of Washington law. Costco Order at 5-7. The Court found that Costco's injury originated in Washington when Costco "negotiat[ed] for the purchase of LCD Products," and that Costco was injured in Washington when it "overpa[id] for LCD products." *Id.* at 6. The Court found these contacts more significant than the contacts Costco attributed to California, which primarily consisted of actions defendants took in furtherance of the conspiracy through their California-based subsidiaries.

Costco now asserts that "California is at the center of this case," and argues that California law should apply to all of its claims. It provides three reasons for this assertion. First, it argues that "Costco purchased and sold more . . . LCD Products in California than in any other state during the Relevant Period." Am. Compl. at ¶7. According to the amended complaint, "[a]bout 40% of all Costco purchases were ordered from and received in California." *Id.* Second, Costco argues that it has a unique relationship with California due to its 1993 merger with Price Club, a company based in San Diego. *Id.* at ¶6. According to the amended complaint, "the two companies were not fully integrated for some years, and the company had two principal executive offices, in San Diego, California, and Kirkland, Washington." *Id.* Costco alleges that "[m]any headquarters functions continued in California for years after the merger," and claims that the two companies were not fully integrated until after 1999. *Id.*

Third, Costco argues that eight defendants and "many of the non-Defendant vendors of LCD Products most relevant to Costco's indirect purchaser claim have their United States headquarters in California." Motion at 4.

Costco's new allegations have not changed this Court's view that Washington bears the most significant relationship to this case. Although sales of LCD products in California may constitute a significant portion of Costco's business, those products were selected in Washington, the negotiation over the terms of purchase took place in Washington, the invoices were sent to Washington, and payment issued from Costco's Washington headquarters. In the Court's view, these events are all more significant to Costco's claims than the issuance of a purchase order.

Costco's merger with Price Club also does not influence this Court's opinion. Even accepting Costco's allegation that "[m]any headquarters functions continued in California for years after the merger," Costco has not alleged that these functions related to the purchasing process. In fact, it has alleged quite the opposite; decisions relating to Costco's purchase of LCD Products were made from its headquarters in Washington.

Finally, although many parties related to this litigation may be located in California, that is not a significant enough contact to justify application of California law. This Court has repeatedly rejected the argument that the actions defendants took within California warrant invocation of California law. *See*, *e.g.*, Motorola Order at 12. The presence of Costco's non-Defendant suppliers of LCD products in California carries even less weight.

Thus, as set forth in its prior order, the Court finds that Costco's purchasing process was controlled from Washington and that Costco was injured in Washington. Washington therefore has the most significant contacts with Costco's claims. Accordingly, Washington law applies.

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motion to dismiss in part amended complaint. Docket No. 58 in 11-0058; Docket No. 3922 in 07-1827.

**IT IS SO ORDERED.**

Dated: November 29, 2011

SUSAN ILLSTON
United States District Judge

3