HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

COSTCO WHOLESALE CORPORATION,

                Plaintiff,

        v.

AU OPTRONICS CORPORATION, et al.,

                Defendants.

CASE NO. C13-1207RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on the parties' motions in limine.  The court issued preliminary rulings to the parties in advance of a September 12 pretrial conference where it heard oral argument.  The court directs the clerk to TERMINATE both motions in limine.  Dkt. ## 514, 516.  The parties shall abide by the rulings stated below at trial.

Costco's and Defendants' motions each contain eleven parts, many of which either overlap or address closely-related topics.  Rather than address each part in the order that the parties presented them, the court will address the motions by topic, concluding its discussion of each topic with a paragraph summarizing the court's ruling and the parts of the parties' motions that the ruling resolves.

The parties are familiar with the background of this litigation, which concerns Costco's attempt to recover damages under federal antitrust law and the Washington Consumer Protection Act for overcharges it allegedly paid for finished products (televisions, monitors, and more) incorporating TFT-LCD panels whose prices were fixed

ORDER – 1

by Defendants and their conspirators.  The court will not address background facts except as necessary.

## II.   ANALYSIS

**A.      Pass-Through of Defendants' Overcharges Will Not Be an Issue at Trial.**

Three parts of Costco's motion seek to prevent Defendants from attempting to reduce Costco's damages by arguing both that the vendors from whom Costco purchased finished products absorbed a portion of the overcharge for the panels in those products (upstream pass-through) and that Costco passed on a portion of any overcharge to its retail customers (downstream pass-through).  Defendants would, if permitted, introduce evidence intended to minimize Costco's vendors' upstream pass-through of the overcharge and to maximize Costco's downstream pass-through to its customers. Defendants believe that they can prove that Costco's bargaining power allowed it to force vendors to absorb overcharges, and that they can prove that Costco's profit margins on finished products remained constant before, during, and after the alleged conspiracy, thus demonstrating that Costco passed on any overcharge it paid to its customers.  In addition, Defendants hope to counter a Costco expert witness who bases his calculations of Costco's damages on an industry-wide overcharge by demonstrating that Costco, because of its bargaining power, paid less than the industry average for finished products.  These examples are illustrative, but not exhaustive, of the pass-through arguments Defendants mentioned in briefing and at oral argument.

Whatever the logical appeal of Defendants' pass-through arguments, Ninth Circuit precedent forecloses them.  Costco intends to prove that the vendors from whom it purchased finished products were in a control relationship with Defendants or their conspirators.  *See* Sept. 11, 2014 ord. (Dkt. # 558) (discussing Costco's burden to prove "control exception" to rule that indirect purchasers lack antitrust standing).  In circumstances like these, upstream pass-through arguments and evidence are likely to be appealing to price fixers, but they are unavailable despite their appeal.  In *Royal Printing*

ORDER – 2

*Co. v. Kimberly-Clark Corp.*, 621 F.2d 323, 327 (9th Cir. 1980), the court ruled that a price fixer in a control relationship with a vendor cannot defend itself by "[d]etermining what portion of the illegal overcharge was 'passed on' to [the purchaser] and what part was absorbed by the middlemen," because doing so would "involve all of the evidentiary and economic complexities" that the Supreme Court "clearly forbade" in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).[1]  Although the court recognized the possibility that allowing a purchaser to recover the full overcharge creates "an opportunity for a windfall gain," it found "nothing wrong with the plaintiff winning a windfall gain, so long as the defendant does not suffer multiple liability, with its potential for windfall loss . . . ." *Royal Printing*, 621 F.2d at 327.  In cases where the price fixer is insulated from the possibility of windfall loss because it is unlikely to face suit from a middleperson with whom it has a control relationship, the risk of multiple liability is small enough to be acceptable.  *Id.* at 327 & n.8.

Defendants attempt to avoid or distinguish *Royal Printing*.  They suggested at oral argument that the Ninth Circuit limited *Royal Printing* in *Brennan v. Concord EFS, Inc. (In re: ATM Fee Antitrust Litig.)*, 686 F.3d 741 (9th Cir. 2012).  That contention finds no support in *ATM Fee*, which does not mention *Royal Printing*'s "full overcharge" rule, much less undermine it.  The *ATM Fee* panel declined to extend *Royal Printing* to circumstances in which there was no control relationship between the price fixers and the middleperson.  686 F.3d at 757.  And although that panel noted the Supreme Court's reluctance to carve out exceptions to the *Illinois Brick* rule, 686 F.3d at 757 (citing *Kansas v. Utilicorp United, Inc.*, 497 U.S. 199, 216 (1990)), it did not suggest that any Supreme Court precedent had implicitly or explicitly overruled *Royal Printing*.  Also unavailing is Defendants' observation that the *Royal Printing* panel considered price-fixing conspirators who controlled the middlepersons from whom the plaintiff purchased,

---

[1] In its September 11, 2014 order denying Defendants' summary judgment motion, the court discussed the application of *Illinois Brick* and Ninth Circuit precedent interpreting it (including *Royal Printing*) to the circumstances of this case.  Dkt. # 558.

ORDER – 3

whereas many control relationships in this case are ones in which the middlepersons controlled the price fixers. That is a distinction without a difference. The reasoning in *Royal Printing* applies with equal force to any control relationship that brings indirect purchases within the scope of the control exception to the *Illinois Brick* rule.

None of the cases cited above directly addresses downstream pass-through; that is the province of *Illinois Brick*'s predecessor and complement – *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968). In *Hanover Shoe*, the Court ruled that a price fixer cannot defend itself from federal antitrust liability by showing that a purchaser passed on an overcharge to downstream customers. *Id.* at 494. The *Royal Printing* court had no need to decide whether its "full overcharge" rule would also apply to downstream pass-through, but that court plainly believed that *Hanover Shoe* dictated that result. Rejecting the notion that a possible windfall to the plaintiff was a reason to reject the full overcharge rule for upstream pass-through, the court noted that the windfall possibility was "no more than was approved in *Hanover Shoe*, where the plaintiff was allowed to recover its 'full' damages even though it had 'mitigated' its damages by passing part of the excessive costs on to its customers." *Royal Printing*, 621 F.2d at 327. The court concludes that allowing Defendants to try to prove Costco's downstream pass-through of overcharges to its customers is no more permissible allowing it to prove that its upstream vendors did not pass through to Costco the overcharges they paid for panels.

Alternatively, Defendants contend that even if *Royal Printing* makes pass-through evidence irrelevant to support a damages defense, it does not exclude that evidence for other purposes. For example, they assert that they must rely on downstream pass-through evidence because they expect that Costco will attempt to curry favor with jurors by suggesting that Costco's customers were either the victims of Defendants' conspiracy or that those customers will ultimately benefit from any damage award. The court understands the concern; Costco informed the court in its motion in limine that "its members . . . will benefit from any recovery by Costco in this case." Pltf.'s Mot. (Dkt.

ORDER – 4

# 516) at 7.  The remedy for that ill, however, is not to permit downstream pass-through evidence, but rather to emphasize to Costco that the court will not permit it to try this case as the champion of its customers.  If Costco attempts to do so at trial, the court will consider admitting downstream pass-through evidence or taking other curative measures.

Defendants contend that downstream pass-through evidence is relevant to its effort to counter Costco's attempt to prove control relationships between Defendants (or their conspirators) and Costco's vendors.  Defendants have not demonstrated, however, that they need to introduce pass-through evidence to prove, for example, that a vendor had independent control over pricing decisions.  Absent that demonstration of need, there is no need to consider burdening the jury with otherwise irrelevant pass-through evidence.  Even if there were a need, the parties have now agreed that the court, not the jury, will decide whether Costco can rely on the control exception.

Defendants also argue that pass-through evidence is necessary to rebut expert damages testimony from Dr. Douglas Bernheim.  The court's ruling regarding pass-through evidence applies with equal force to Costco and its witnesses.  Dr. Bernheim may not opine on pass-through, even if he previously expressed opinions on it.  The court notes, however, that it is not clear whether Dr. Bernheim's pass-through opinions address pass-through of Defendants' overcharges to Costco, or whether they address the extent to which the increased cost of TFT-LCD panels is reflected in the cost of finished products incorporating those panels.  That issue is not before the court.

Defendants also point out that in another case stemming from the multidistrict litigation of which this case was once part, the court instructed the jury to calculate damages based on what the plaintiff actually paid for finished products.  The court suggests no view on how it will instruct the jury, but Defendants need not rely on pass-through evidence to argue that the jury should calculate damages based on what Costco paid.  If, as Defendants contend, Dr. Bernheim will testify that Costco (like other similarly situated purchasers) paid an 18% overcharge on finished products, Defendants

ORDER – 5

may offer evidence or argument that that overcharge applies (if at all) to the prices Costco actually paid.  To use pass-through evidence (including evidence of Costco's bargaining power) to dispute Dr. Bernheim's calculation of an overcharge rate that applies not only to Costco but to similarly-situated purchasers of finished products would be to offer the pass-through argument that *Royal Printing* rejects.

The court grants the third, fourth, and ninth parts of Costco's motions in limine. Defendants may not rely on evidence or argument suggesting either that Costco's vendors absorbed the overcharge at issue in this case, or that Costco passed that overcharge along to its customers.  The same ruling applies to Costco.  This ruling excludes evidence that, Costco's bargaining power allowed it to obtain better prices than others, but it does not prohibit evidence or argument about the prices Costco paid for the finished products at issue.  The court prohibits Costco from offering evidence or argument that its customers will benefit from any damages the jury awards.

**B.      Defendants May Not Offer Evidence of Costco's Price Monitoring.**

Defendants contend that they can use evidence that Costco monitors its competitors' retail prices to demonstrate that Defendants' conduct was lawful.  Beyond that generic contention, Defendants offer no examples of their own conduct whose lawfulness would be illustrated by offering evidence of Costco's price monitoring. Without those examples, the court shares Costco's concern that Defendants would offer evidence of Costco's price monitoring only to suggest to the jury (without basis) that Costco's practices are questionable.  Whatever marginal relevance evidence of Costco's price monitoring might have to an issue before the jury is substantially outweighed by its potential to prejudice the jury, confuse it, or put greater burdens on its time.  In particular, Defendants can easily argue that monitoring market prices is lawful without pointing to Costco's conduct.

The court grants the fifth part of Costco's motion in limine, and rules that Defendants may not offer evidence that Costco monitors its competitors' prices.

ORDER – 6

**C.     The Court Will Not Exclude Relevant Evidence as to Conspiracies Involving Products Other than TFT-LCD Panels.**

Some of the evidence Costco hopes to introduce to prove the conspiracy mentions price fixing (or, at a minimum, concerted activity among competitors) in markets for other products, ranging from cathode-ray tube products to the market for ABS (acrylonitrile butadiene styrene) plastics.  In one example, a witness explains that she prefers communicating orally about TFT-LCD panel production figures and excluding Hitachi's legal department from those communications because of lawsuits involving price-fixing of dynamic random access memory products.  Costco points to other evidence in which Defendants or their alleged conspirators consider lessons learned from other products when discussing their efforts to influence the TFT-LCD panel market.

Although there is some danger that the jury will be influenced by evidence showing that Defendants or their conspirators engaged in other wrongdoing, that danger is necessary in light of the probative value of the evidence.  Defendants cannot avoid this evidence where it is intertwined with evidence of indisputable relevance to the conspiracy at issue.  Defendants have given the court no reason to believe that Costco will introduce evidence of conspiracies as to other products unless there is a direct link to the conspiracy at issue, although Defendants may object at trial if Costco does.

The court denies the fifth part of Defendants' motion.  The court will not exclude, before trial, all evidence of price fixing or similar conduct as to other products. Defendants may object at trial to an individual piece of evidence on the basis that it is not relevant to the conspiracy at issue in this lawsuit or is of such marginal relevance that the danger of prejudice substantially outweighs it.  The court will also consider, on proper request from a party, an instruction to the jury that it not base its verdict on a belief that Defendants have demonstrated a propensity to engage in anticompetitive conduct.

**D.     The Court Will Not Exclude Evidence that Panasonic Was a Conspirator.**

The court is neither convinced that Defendants were unaware that Costco believed that Panasonic was a conspirator prior to June 2014 nor is it convinced that Defendants

ORDER – 7

will suffer any prejudice from Costco pursuing that contention at trial.  Even if Defendants had demonstrated prejudice, they fall short of convincing the court that they could not, in the exercise of diligence, have cured that prejudice in advance of trial.

The court denies the sixth part of Defendants' motion.  The court will not prevent Costco from presenting evidence or argument that Panasonic was part of the price-fixing conspiracy at issue in this case.

**E.   No One May Offer Evidence of the Amount of Any Settling Defendant's Payment to Costco.**

Because some representatives of entities who were formerly defendants in this suit will testify at trial, Defendants seek to introduce evidence of their settlement agreements with Costco to illustrate their potential bias.  No one disputes that Defendants may ask these witnesses if they have settled Costco's claims against them, and no one disputes that Defendants may inquire about whether those settlements included agreements to cooperate with Costco in its pursuit of claims against the remaining Defendants.

The parties' disputes are over whether Defendants can inquire about the amount the settling defendants agreed to pay.  Defendants would not only inquire about the amount, but also whether the settling defendants were aware that if they pursued the claims to trial, they faced the prospect of paying Costco treble damages as well as its attorney fees and costs.  That evidence is potentially relevant, because Defendants could establish the amount that a setting defendant might have paid if it had gone to trial, compare it to the amount it actually paid, and equate the difference to the magnitude of a witness's incentive to cooperate.  That is problematic for several reasons.  First, it would take unnecessary jury time to demonstrate the amount each settling defendant might have paid.  Even if the representatives of the settling defendants who testify at trial were able to offer competent evidence of that amount, Costco (or Defendants) could counter it with their own evidence.  Second, there is significant risk that disclosure of the settlement amounts would anchor or buoy the jury's consideration of Costco's damages, which is

ORDER – 8

among the reasons that settlement discussions are presumptively inadmissible.  Third, all parties agree that the jury in the ordinary case would never be informed about the possibility of treble damages, attorney fees, or costs.  The danger is that "a jury, informed of plaintiff's right to additional funds, will view the money as a windfall and take steps to offset it." *Brooks v. Cook*, 938 F.2d 1048, 1052 (9th Cir. 1991).  For that reason, the possibility of treble damages or attorney fees "should play no part in the jury's deliberation." *Id.* at 1053.  Defendants cannot inform the jury that the settling defendants faced treble damages and more without implicitly revealing that they face the same risk.

The court grants the first and seventh parts of Costco's motion.  No party may ask questions, introduce evidence, or make argument revealing either the amount that any settling defendant paid to Costco or that the settling defendants faced the prospect of attorney fees, costs, and treble damages.  This ruling does not preclude Defendants from asking the settling defendants' representatives about whether they settled their claims with Costco, whether they agreed to cooperate with Costco as part of the settlement, and whether those defendants agreed to pay an undisclosed sum of money to Costco.  If necessary, the court will consider an instruction to the jury that it should not speculate about the amount of any settlement or consider the settlements for purposes of assessing Costco's damages, and that evidence that some defendants paid a settlement is relevant only to establish whether a witness has a bias.  If necessary, the court will also consider an instruction that the jury need not concern itself with offsetting Costco's damages to account for payments from settling defendants.

## F.   The Parties May Not Introduce Evidence of Other Civil Trials or Settlements.

Defendants' conspiracy has spawned many civil cases in addition to this one. Some have gone to trial, some have resulted in settlements, and some are still pending. In some, the beneficiaries are retailers like Costco.  In others, including civil actions by some states' attorneys general, the beneficiaries are consumers.  Defendants want to introduce evidence of these other civil cases for a variety of reasons.

ORDER – 9

Defendants fear that the jury might treat Costco more favorably if it is left with the impression that Costco is the sole party attempting to hold Defendants liable for price fixing.  To alleviate that fear, the court need not permit Defendants to introduce evidence of other lawsuits, it can order Costco not to suggest to the jury that it is the sole private antitrust enforcer seeking to hold Defendants accountable.  There is no way to try this case without revealing that Costco was not the only party harmed.  The jury may speculate as to whether there have been other lawsuits, but the court has no reason to believe that that speculation will influence their verdict in this case.

One of the civil trials, in which Best Buy was the plaintiff, resulted in a damages award that (according to Defendants) that was much less than Best Buy had hoped.  Best Buy, like Costco and many of the plaintiffs in other civil suits, relied on Dr. Bernheim as its principal damages expert.  In Defendants' view, the Best Buy verdict is a repudiation of Dr. Bernheim's analysis, and they are entitled to point out as much when they cross-examine him.  The court disagrees.  Even granting the charitable assumption that it is fair to interpret the Best Buy verdict as a repudiation of Dr. Bernheim's analysis, one jury's repudiation of Dr. Bernheim has no bearing on whether the jury who hears this case should repudiate Dr. Bernheim.

Defendants also contend that Dr. Bernheim's damages calculations rely in part on an academic survey of jury verdicts.  That study does not include the Best Buy verdict (or, presumably, any verdict that predates Dr. Bernheim's involvement in this case).  Defendants would thus cross-examine Dr. Bernheim by asking him how the outcome of the Best Buy trial influences his damages model.  Defendants could point out the temporal limitations of the jury verdict study without mentioning the Best Buy trial, but they need not do so, because Costco agreed at the pretrial conference that Dr. Bernheim will not testify about the jury verdict study.

Defendants contend that the jury may reject their damages expert's calculation of an overcharge rate that is much smaller than Dr. Bernheim's rate because it results in

ORDER – 10

small damages to Costco.  So be it; that is what the jury ought to do if it believes that Defendants' expert's damage calculation is too small.  A small overcharge rate results in proportionately small damages; that rate is no more or less defensible because, when applied to all of the purchasers impacted by the conspiracy, it results in substantial damages.  As this court has already stated, this case will be tried solely as a dispute between Costco and Defendants.

Defendants suggest that no one can properly examine an expert witness about his or her bias if they cannot point out that the expert's overall compensation comes not only from this case, but from the many other cases stemming from this conspiracy.  Surely the parties, both of whom have experts who have no doubt received princely payments, can reach an agreement that allows them to reveal that they pay their experts without revealing the existence of other litigation.  If they cannot reach that agreement, the court will force one upon them.

Defendants stretch mightily to proffer reasons that the existence of other lawsuits, settlements, and verdicts is relevant.  They ignore the danger of that evidence, which is that the jury will allow its damages award to Costco to be anchored or buoyed by evidence of those verdicts.  Defendants offer no convincing argument that the probative value of "other lawsuit" evidence justifies that risk.  The court has already ruled that it will prohibit Costco from trying this case as the champion of its customers.  It will similarly prohibit Costco from trying this cases as the champion of other entities' customers or of other entities.  The court is confident that the jury can confine its consideration to the dispute between Costco and Defendants, even though it will be aware that others were potentially harmed by the conspiracy, and even though it may speculate that there are or have been other lawsuits, settlements, and verdicts.  Ruling that no party will rely on evidence of other lawsuits or their outcomes bolsters the court's confidence.

The court grants the sixth and eight parts of Costco's motion and denies the eleventh part of Defendants' motion.  No party may refer to other civil matters, including,

ORDER – 11

but not limited to, the Best Buy trial, actions brought by various states' attorneys general, and class actions stemming from the multidistrict litigation to which this case once belonged.  Defendants may not impeach Dr. Bernheim by referring to the Best Buy trial or its outcome.  Because there is a possibility that evidence or argument at trial will reveal or suggest the existence of other civil actions, the court may consider giving an instruction that the jury should confine its consideration to the dispute between Costco and Defendants.

**G.    The Court Will not Permit Defendants to Rely on Their Conspirators' Previous Trial Testimony.**

Defendants' alleged conspirators have testified at both civil and criminal trials arising from this price-fixing conspiracies.  Costco could, provided it were to lay an adequate foundation, rely on numerous hearsay exceptions to introduce that testimony at trial.  But Costco has disclaimed its intent to do so, promising that it will rely on prior trial testimony, if at all, solely to impeach a witness.

Defendants, on the other hand, point to only one hearsay exception that might permit them to rely on the prior trial testimony of their alleged conspirators – the one at Federal Rule of Evidence 804(b)(1).  That exception permits the use of prior trial testimony against a party, but only where that party or that party's predecessor-in-interest had an "opportunity and similar motive to develop" that testimony through direct, cross-, or redirect examination.  Fed. R. Evid. 804(b)(1).

Even assuming that Defendants could show that a witness who testified at another trial was unavailable, Defendants could not show that anyone who had the opportunity to examine that witness was Costco's predecessor-in-interest or had a similar motive.  The bare fact that plaintiffs in those cases also wished to hold Defendants or their conspirators liable for price fixing is not nearly enough to establish the applicability of this exception.

The court denies the seventh part of Defendants' motion, and rules that Defendants may not rely on the trial testimony of any alleged conspirator.  To the extent

ORDER – 12

that Costco relies on prior trial testimony for impeachment, nothing prevents Defendants from invoking the rule of completeness to ensure that sufficient testimony is admitted to place the testimony in its proper context.  This ruling does not prohibit Defendants from attempting (as they suggested at oral argument) to secure Costco's agreement that in some instances prior trial testimony is preferable, for ease of jury comprehension, to a witness's deposition testimony.  The court will not force that agreement on Costco.

**H.     The Amount of Defendants' Criminal Fines and the Volume of Commerce to Which Some Defendants Admitted Are Neither Relevant nor Admissible; the Japanese Manufacturers' Convictions are Relevant and Admissible.**

Defendants have been convicted (through trial or guilty plea) of a conspiracy spanning 2001 to 2006.  Costco hopes to prove that Defendants' conspiracy not only started at least three years sooner, but that it also included several manufacturers based in Japan.  The Japanese manufacturers also pleaded guilty to a conspiracy to fix TFT-LCD prices, but Defendants assert that conspiracy covered fewer years (as to at least some of the manufacturers), and involved only sales to Dell, Motorola, and Apple.

The criminal convictions are the subject of several parts of Defendants' motion in limine.  What the motions in limine do not directly address is a simmering dispute between the parties as to what, if anything, the criminal pleas establish.  The Clayton Act will guide the ultimate resolution of that dispute.  One of its sections provides in relevant part as follows:

> A final judgment or decree heretofore or hereafter rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto . . . .

15 U.S.C. § 16(a).

Costco's briefing suggests that it overplays this statute, which does not dictate that a criminal antitrust judgment "establishes" any fact.  Instead, a criminal judgment is

ORDER – 13

prima facie evidence of facts that the defendant would be estopped to deny if the government asserted them. Practically speaking, this may mean that certain facts are established, but that is not necessarily true for all facts that the criminal judgment incorporates. At the pretrial conference, the court ordered the parties to continue to meet and confer in an effort to reach agreement about what, if anything, the court should deem established as a result of the criminal judgments.

For now, there are some facts that the court need not deem established because they are not relevant: the amount of the fine imposed on any Defendant, the volume of United States commerce that the pleading Defendants admitted for sentencing purposes, and the "gross gains" finding that the jury reached in convicting Defendant AU Optronics.

That Defendants are estopped from contesting that they paid criminal fines says nothing about whether or not those fines or the amount of those fines has any relevance to Costco's case. Defendants posit that the sole reason Costco wishes to introduce evidence of the criminal fines is to suggest to the jury that the damages it seeks are comparatively small. The court agrees with Defendants. The jury will not know the amount of the criminal fines. Indeed, the jury will not know that Defendants were assessed fines unless Costco can demonstrate the relevance of that information.

The Defendants who pleaded guilty admitted, at least for purposes of sentencing, the volume of United States commerce ("VOC") that their conspiracy impacted. There is no question that the impact on Costco is much smaller than the nationwide VOC figures underlying each Defendant's sentence. Costco believes that the VOC figures may help it prevent Defendants from taking shelter in the Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a. On this record, that is not likely, but it is not impossible. The court will exclude evidence of the VOC figures. Costco may not mention them in front of the jury. Costco may, once Defendants have introduced evidence or argument that would make the VOC figures relevant, seek leave of court to introduce the VOC figures. If it does so, it

ORDER – 14

will have to make a much stronger showing both that the VOC figures are relevant and that admissions made for purposes of sentencing are admissible in this civil action.

The court must at least preliminarily exclude evidence of AU Optronics's gross gains. On this record, the danger that that figure will unduly influence the jury's verdict substantially outweighs its probative value. If Defendants introduce evidence suggesting that AU Optronics' gross gains were smaller, the court will entertain a request from Costco for permission to inform the jury that the criminal jury found otherwise.

Unlike evidence of the criminal fines, the VOC figures, and AU Optronics's gross gains, the court finds no danger of undue prejudice flowing from the admission of the criminal convictions of the Japanese manufacturers. Costco can use those convictions as part of its effort to show that the conspiracy that those convictions establish is part of the conspiracy it hopes to prove at trial. Assuming that the parties are unable to agree on how to present those convictions to the jury, the court will ensure that Costco does not overstate what the convictions of the Japanese manufacturers establish. Defendants suggest that there is a risk that the jury will believe it more likely that the Japanese manufacturers conspired with them because they admitted to unrelated conspiratorial conduct. That is a small risk, because there is no indication that Costco intends to make "propensity-to-conspire" arguments. Instead, it intends to prove that the conspiracy to which the Japanese manufacturers admitted is part of the conspiracy at issue in this case.

The court grants the first and second parts of Defendants' motion in limine, but denies the fourth part. No one may introduce evidence or argument revealing the amount of Defendants' criminal fines, and no one may introduce evidence that Defendants were assessed fines without leave of court. No one may introduce evidence or argument regarding the VOC figures to which some Defendants admitted for sentencing purposes without leave of court. No one may introduce evidence of the jury's verdict as to AU Optronics's gross gains without leave of court. The criminal convictions of the Japanese manufacturers, however, are admissible. The court has already directed the parties to

ORDER – 15

meet and confer to attempt to reach agreement on how to present evidence of criminal convictions to the jury, and the court will resolve any disputes on that issue before anyone introduces evidence of a criminal conviction at trial. This ruling does not prevent any party from discussing the existence of the criminal convictions (but not the fines, VOC figures, or gross gains figures) during voir dire or opening statements.

## I. Defendants May Not Introduce Evidence of Department of Justice Attorneys' Statements in Connection with Any Conspirator's Criminal Conviction.

Attorneys from the United States Department of Justice made statements during the prosecutions of Defendants and the Japanese manufacturers that, in Defendants' view, are additional proof that Defendants' conspiracy was confined to 2001 to 2006 and did not include the Japanese manufacturers. Some of those statements were in court, some were to media. For example, a DOJ attorney prosecuting Hitachi stated to the court accepting Hitachi's plea that it did not believe that Hitachi or Sharp were part of the "larger conspiracy" involving Defendants.

These statements are hearsay. They are statements that the declarants did "not make while testifying at the current trial," and they are offered to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). No hearsay exception applies. Defendants point to the exception for "factual findings from a legally authorized investigation" at Rule 803(8)(A)(iii), but Defendants have offered nothing that would permit the court to conclude that the DOJ's attorneys' statements were "factual findings." The court is aware of no precedent supporting the notion that every assertion a DOJ attorney utters in connection with a criminal prosecution becomes a "factual finding" exempt from the rule against hearsay.

Unable to point to codified hearsay exceptions, Defendants posit new ones. They suggest that any statement that "contribute[s] to a fuller understanding" of other documents (like the criminal convictions) is not hearsay. Defendants are mistaken. The case they cite for their novel hearsay exception, *Beech Aircraft Corp. v. Rainey*, 488 U.S.

ORDER – 16

153 (1988), does not support it.  In *Beech Aircraft*, the Court considered whether a trial court had erred in permitting a defendant to introduce one portion of a letter the plaintiff had written questioning an investigative report, but preventing plaintiff's counsel from pointing out another portion of the letter on cross-examination.  *Id.* at 159-60.  The Court found error, noting that the excluded portion of the letter was necessary to counter the misleading impression conveyed by relying only on the portion of the letter that Defendants cited.  *Id.* at 171-72.  That was little more than a straightforward application of the rule of completeness, a version of which is codified at Federal Rule of Evidence 106.  *Id.* at 172.  That rule provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction at that time, of any other party – or any other writing or recorded statement – that in fairness ought to be considered at the same time."  Fed. R. Evid. 106.  The rule of completeness is not, however, an exception to the rule against hearsay.  In *Beech Aircraft*, the Court observed that the excluded portion of the plaintiff's letter was not hearsay because it was "not offered to prove the truth of the matter asserted," it was offered "simply to prove what [the plaintiff] had said about the accident six months after it happened, and to contribute to a fuller understanding of the material the defense had already placed in evidence."  488 U.S. at 173 n.18.

The DOJ statements at issue bear virtually no resemblance to the erroneously excluded statements in *Beech Aircraft*.  First, there is no question that Defendants hope to introduce the DOJ statements for the purpose of proving the truth of the matters asserted therein.  They hope to prove that there were separate conspiracies by introducing a statement from a DOJ attorney that there were separate conspiracies.  This is hearsay, and as the court has noted, no exception applies.  *Beech Aircraft* is not carte blanche to admit hearsay whenever it "contribute[s] to a fuller understanding" of material already in evidence, it is a ruling that it is error, in some circumstances, to exclude evidence that places other evidence in context.  Putting aside the hearsay problem that Defendants have

ORDER – 17

not solved, the DOJ statements are not necessary to correct any misleading impression inherent in admitting the criminal convictions. The criminal judgments speak for themselves; it is hard to imagine that they are misleading, and in any event the court will not permit any party to rely on them in a misleading way. That Costco wishes to use some criminal judgments as a building block in proving a larger conspiracy is no reason to admit hearsay statements of the prosecutor extraneous to the criminal judgments. If no one convicted the Japanese manufacturers of conspiring with Defendants, the jury will not hear otherwise. The court has no reason to believe that the hearsay statements of DOJ attorneys will be necessary to correct any misleading impression flowing from any criminal conviction.

The court grants the second part of Costco's motion in limine. No party may introduce evidence of any DOJ attorney's statements in connection with the prosecutions of Defendants, the Japanese manufacturers, or anyone else.

**J.      No Party May Introduce Evidence of Fifth Amendment Invocations.**

Many witnesses associated with Defendants and their conspirators invoked the Fifth Amendment and declined to answer questions posed to them at depositions. Many of those witnesses initially refused to testify, but later testified once the scope of criminal investigations became more clear. Costco does not wish to offer evidence of a Fifth Amendment invocation from any witness who later retracted it, but hopes to introduce evidence as to five witnesses who did not retract their Fifth Amendment invocations.

It would take substantial time to allow the parties to present evidence about the context in which each of these witnesses invoked the Fifth Amendment. Defendants would be entitled to put on evidence of the progress of the criminal investigations. As the parties acknowledge, people invoke the Fifth Amendment in contexts like these for a number of reasons. It is possible that a witness invokes the Fifth Amendment because she knows that the answer to a specific question will incriminate her, but it is also possible (if not likely, in this case) that a witness asserts the Fifth Amendment based on

ORDER – 18

the advice of counsel without any personal belief as to whether testimony will incriminate her.  Rather than take up jury time considering the context of these invocations, then leaving the jury to guess as to what motivated the witness's Fifth Amendment invocation, the court will exclude all evidence of Fifth Amendment invocations.  Costco has not persuaded the court that it will be prejudiced as a result of this ruling.  The court cautions Defendants, however, that if they present evidence or argument that highlights Costco's failure to call one of the witnesses who invoked the Fifth Amendment (and did not retract the invocation), the court will consider Costco's request to admit the Fifth Amendment invocation of that witness.

The court grants the third part of Defendants' motion and excludes evidence that any witness invoked his or her Fifth Amendment right to remain silent.  To the extent that Defendants highlight the absence of testimony from any witness who invoked the Fifth Amendment, the court will consider a request from Costco to admit that witness's Fifth Amendment invocation.

**K.    The Court Will Not Distinguish Between "Track 1" and "Track 2" Expert Testimony at Trial.**

In the multidistrict litigation, the court set two "tracks" of cases involving plaintiffs similarly situated to Costco.  This case was part of Track 1.  Track 1 had its own pretrial schedule, including deadlines for the disclosure of expert witness reports.  The witnesses who will testify at trial all disclosed reports in accordance with those deadlines.

Because the parties in the Track 1 and Track 2 cases rely on many of the same expert witnesses, some (perhaps all) of the experts who will testify in this case also offered Track 2 reports.  Defendants seek to exclude opinions first disclosed in Track 2 reports from trial.

In the ordinary case, the court would enforce pretrial deadlines for expert disclosures rigorously, in accordance with Federal Rules of Civil Procedure 26(a)(2) and

ORDER – 19

37(c)(1).  But this is no ordinary case.  Defendants do not dispute that they had full disclosure of Track 2 reports, that their own experts rebutted those reports, and that they took Track 2 discovery from every expert witness on whom Costco will rely.

Moreover, the parties demonstrated conclusively during the pretrial conference that resolving disputes about whether an opinion was first disclosed in Track 1 or Track 2 will be a cumbersome process.  Rather than burden the parties, the court, and the jury with those disputes, the court will not distinguish between Track 1 and Track 2 expert disclosures at trial.

The court denies the ninth part of Defendants' motion, which seeks to exclude all expert opinions first disclosed in Track 2.

**L.      Dr. Bernheim May Not Testify as to the Damage Figure He Arrived At By Using a Cost-Based Damages Model.**

The court also resolves one dispute that the parties raised only in a pretrial statement that came after they filed motions in limine.  There, Defendants asked the court to exclude new evidence from Dr. Bernheim.  In the process of adjusting his damage calculations and Defendants' request to exclude damages arising from purchases that will not be at issue in this trial, Dr. Bernheim also disclosed, for the first time, the damages figure that would result if he relied on a particular cost-based damages model.  That disclosure came on or about August 14 of this year.

The evidence the parties presented at the pretrial conference shows that Dr. Bernheim long ago disclosed this cost-based damages model.  He did so because one of Defendants' experts (or perhaps Defendants themselves) touted the superiority of calculating damages by focusing on the costs to Defendants of manufacturing the panels at issue.  In that old disclosure, Dr. Bernheim both explained why he believed that the cost-based model was inferior, and that he had performed calculations using a cost-based model which resulted in a higher damages figure for Costco.  His August 14 disclosure

ORDER – 20

disclosed that higher damages figure for the first time – it is about 30% higher than the amount of damages Costco intends to present at trial.

Defendants fear that Costco is attempting to belatedly inflate its damages.  The court doubts that is the case.  It seems unlikely, to say the least, that Costco will attempt to prove damages based on a model that its own expert finds invalid.  The danger, if there is one, is that Costco might use the new calculation to suggest that the smaller damages figure it is requesting is modest by comparison.

There is no dispute that the damages calculation at issue was disclosed too late. Dr. Bernheim may not disclose it.  He may, consistent with his prior opinions, testify that he considered a cost-based damages model, and that he ran calculations using that model that resulted in a higher damages figure.  Provided Defendants do not ask him what that figure was, he may not disclose it, and neither may Costco's counsel.

**M.    The Court Will not Limit the Number of Expert Witnesses.**

The court denies the eleventh part of Costco's motion, which seeks to prevent Defendants from calling more than three expert witnesses.  The court has already limited the parties' trial time.  Defendants may use their time as they see fit.  The court has no reason to believe that Defendants' experts will be offering unduly cumulative testimony. To the extent that any expert (or any witness, for that matter) offers unduly cumulative testimony, the parties are free to object during trial.

**N.    The Court Reserves Ruling on a Few Parts of the Parties' Motions.**

There are a few parts of the parties' motions on which the court reserves ruling. Costco has yet to complete the summary exhibits about which Daniel Gill will testify, and the parties have promised to meet and confer to narrow or eliminate their disputes about his exhibits and testimony.  The court therefore reserves ruling on the tenth part of Defendants' motion, which seeks to exclude or limit Mr. Gill's testimony.

Costco has agreed that it will not call expert witness David Stowell, if at all, until the rebuttal phase of its case.  The parties are in agreement that no party may refer to the

ORDER – 21

multidistrict litigation special master's rulings, eliminating the need for the court to rule on the tenth part of Costco's motion.  To the extent that motion raised a dispute about using the special master's exclusion of a portion of one of Dr. Stowell's expert reports as impeachment of Dr. Stowell, the court reserves ruling.  The court will rule only if Costco decides to call Dr. Stowell as a witness and Defendants are unable, after meeting and conferring with Costco, to resolve their dispute on this issue.

Finally, the court reserves ruling on the eight part of Defendants' motion, which concerns whether Costco may attempt to recover damages for products incorporating panels made by non-conspiring manufacturers.  The court has ordered supplemental briefing on that dispute, and will resolve it in a separate order.

### III.   CONCLUSION

The court rules on the parties' motions in limine as stated above.  The clerk shall TERMINATE both motions.  Dkt. ## 514, 516.

DATED this 18th day of September, 2014.

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 22