HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

COSTCO WHOLESALE CORPORATION,

                Plaintiff,

      v.

AU OPTRONICS CORPORATION, et al.,

              Defendants.

CASE NO. C13-1207RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on a motion for summary judgment from Defendants AU Optronics, Chi Mei, and LG Display.[1]  Defendants requested oral argument, but the court finds oral argument unnecessary.  For the reasons stated herein, the court DENIES the motion.  Dkt. # 486.

## II.  BACKGROUND & ANALYSIS

**A.**    **The FTAIA and Costco's Purchases from Panasonic**

Defendants ask the court to grant summary judgment that because of the Foreign Trade Antitrust Improvements Act ("FTAIA"), Costco cannot recover damages based on all but a small fraction of its purchases of flat screen televisions from Panasonic from

---

[1] Each Defendant is a group of at least two entities.  The parties know who belongs to each group, and the court simplifies matters by referring to each group of Defendants as a single Defendant and not reciting most full corporate names.

On September 18, the court received informal notification that the Chi Mei group and Costco had reached a settlement.  No one has formally confirmed that settlement, and the court will treat the Chi Mei as a Defendant until the court receives a formal dismissal of these claims.

ORDER – 1

2003 to 2006.  Costco bought televisions worth nearly $77 million from Panasonic during that time, all of which incorporated price-fixed TFT-LCD panels that Defendants and their conspirators manufactured abroad.  Defendants shipped just a small fraction of those panels from their foreign manufacturing facilities to Panasonic facilities in the United States.  Defendants shipped the vast majority of the panels to foreign locations.  Often, that foreign location was a facility where Panasonic itself assembled the panels into televisions.  For about 10% of the shipments, the foreign location was a facility operated by Daewoo or Quanta, two foreign "systems integrators" who apparently assembled the panels into Panasonic-branded televisions.  Only those panels that Defendants first shipped to foreign locations are at issue in this motion.  Defendants contend that they shipped about 10% of those panels to Daewoo or Quanta, that they shipped 90% of them to Panasonic, and that of that 90%, no less than 1% and no greater than 7% were initially shipped from Defendants to Panasonic facilities in the United States.  The court accepts those figures for illustrative purposes, suggesting no opinion on whether Defendants have established those facts beyond dispute.

Defendants ask the court to rule that, as a matter of law, the FTAIA prevents Costco from raising a Sherman Act claim based on its purchases of televisions containing panels that Defendants first shipped in foreign commerce.  The provision of the FTAIA at issue states as follows:

> Sections 1 to 7 of this title shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless—
>
> (1)     such conduct has a direct, substantial, and reasonably foreseeable effect—
>
> (A)     on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or
>
> (B)     on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States; and

ORDER – 2

> (2)     such effect gives rise to a claim under the provisions of sections 1 to 7 of this title, other than this section.

> If sections 1 to 7 of this title apply to such conduct only because of the operation of paragraph (1)(B), then sections 1 to 7 of this title shall apply to such conduct only for injury to export business in the United States.

15 U.S.C. § 6a. The FTAIA has no impact on "import trade" or "import commerce," terms that may have different meanings but that the court will use interchangeably. *Id.*; *see also F. Hoffman-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 162 (2004).[2]

All other foreign trade is within the FTAIA's scope, unless it falls within the statute's domestic-effect exception, which requires both conduct with a "direct, substantial, and reasonably foreseeable effect" on domestic import commerce or certain domestic export commerce *and* an antitrust injury that arises from that domestic effect. *Empagran*, 452 U.S. at 162. The court uses the phrase "domestic-effect exception" as a shorthand, but that shorthand should not obscure that a plaintiff can take advantage of the exception by showing an effect on domestic commerce (*i.e.*, "trade or commerce which is not trade or commerce with foreign nations"), *or* "import trade or import commerce," *or* certain "export trade or export commerce." 15 U.S.C. § 6a(1)(A)-(B); *see also Empagran*, 542 U.S. at 161 (noting that FTAIA operates "by removing from the Sherman Act's reach, (1) export activities and (2) other commercial activities taking place abroad, *unless* those activities adversely affect domestic commerce, imports to the United States, or exporting activities . . . within the United States.") (emphasis in original).

The "effect" that the FTAIA describes must be "direct, substantial, and reasonably foreseeable." In the Ninth Circuit, an effect is "direct" within the meaning of the FTAIA if it "follows as an immediate consequence of the defendant's activity." *United States v. LSL Biotechs.*, 379 F.3d 672, 680 (9th Cir. 2004). An effect is not "direct" where it depends on "uncertain intervening developments." *Id.* at 681. A domestic effect "gives

---

[2] Import trade is subject to the general rule regarding Sherman Act liability for foreign conduct: "[T]he Sherman Act applies to foreign conduct that was meant to produce and did in fact produce some substantial effect in the United States." *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 796 (1993). Defendants offer no argument as to Costco's prospects for satisfying the *Hartford Fire* rule.

ORDER – 3

rise" to an antitrust claim within the meaning of the FTAIA if it proximately causes the claim; but-for causation is insufficient.  *In re Dynamic Random Access Memory Antitrust Litig. ("DRAM")*, 546 F.3d 981, 987 (9th Cir. 2008).

Returning to Costco's case, Defendants assert that any Panasonic televisions containing panels that they initially shipped in foreign commerce are not, as a matter of law, "import trade" within the meaning of the FTAIA.  They next contend that Costco cannot, as a matter of law, establish that the FTAIA's domestic-effect exception applies to its purchases of these televisions.  The parties are familiar with the standards applicable to a summary judgment motion, and the court does not repeat them here.

**B.    Defendants Are Not Entitled to Summary Judgment.**

Putting aside the merits of Defendants' contentions regarding the application of the FTAIA to Costco's Panasonic purchases, Defendants' motion for summary judgment cannot clear two substantial obstacles.  The first is Defendants' failure to bring this motion before the MDL court.  The court discussed the MDL court's pretrial schedule in its previous order denying Defendants' motion for summary judgment (Dkt. # 558), and does not repeat that discussion here.  It suffices to observe that Defendants offer no justification for bringing this motion for the first time in this court, a year after the MDL court returned it here for trial.  Had Defendants brought this motion in the MDL court, they would have lost.  The MDL issued several orders, albeit not in the case between Defendants and Costco,[3] that adopted a view of the FTAIA that is fatal to Defendants' arguments in this motion.  Defendants do not attempt to argue otherwise.  They do not convince the court that there is any basis for allowing them to evade the MDL court by filing their motion for the first time here.

---

[3] The court does not know how many times the MDL court ruled on the application of the FTAIA, but it did so at least once in a class action brought by retail purchasers of Defendants' panels and repeatedly in a suit that Motorola brought against Defendants, most recently in 2012. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 822 F. Supp. 2d 953 (N.D. Cal. 2011) (indirect purchaser class action); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2012 U.S. Dist. LEXIS 112499 (N.D. Cal. Aug. 9, 2012).

ORDER – 4

1   Second, even if the court were to disregard Defendants' evasion of the MDL court

2   and accept Defendants' view of the law and the evidence they cited in their motion,

3   disputed facts would nonetheless prevent summary judgment.  In ruling on the parties'

4   motions in limine, the court rejected Defendants' attempt to prevent Costco from

5   presenting evidence at trial that Panasonic conspired with Defendants.  Sept. 17 ord.

6   (Dkt. # 569) at 7-8.  Defendants presented no *evidence* in this motion that would permit

7   the court to conclude that Panasonic was not a conspirator; they relied instead on the

8   waiver arguments the court rejected in their motion in limine.

9   If the jury finds that Panasonic was a conspirator, then the jury can conclude that

10  the FTAIA does not apply because Panasonic's sales of finished products to Costco were

11  import trade.  Although the meaning of "import trade" in the FTAIA is not entirely clear,

12  it is settled that sales from a foreign entity[4] to a United States customer are import trade.

13  *United States v. Hsiung*, 758 F.3d 1074, 1090 (9th Cir. 2014).  The *Hsiung* court, which

14  considered AU Optronics's appeal of its criminal antitrust conviction for the price-fixing

15  conspiracy at issue in this case, found that AU Optronics's sales of *panels* directly to

16  various finished product manufacturers in the United States were import trade.  *Id.* at

17  1090-91.  As the court will discuss later, the *Hsiung* court considered but did not decide

18  whether selling panels abroad for foreign assembly into finished import products is

19  "import trade."  Nonetheless, Defendants could not credibly contend that the *Hsiung*

20  court would have deemed a transaction beyond the scope of "import commerce" merely

21  because one conspirator manufactured components then shipped them in foreign

22  commerce *to another conspirator* who assembled them into a finished product for import

23

24  [4] The only "Panasonic" to which Defendants refer in their motion is Panasonic Corporation, a
    Japanese entity.  The court thus accepts Defendants' assertion (which Costco does not contest)

25  that Costco purchased its Panasonic-branded televisions directly from Panasonic.  The court
    observes that the parties have consistently represented elsewhere that Costco purchased

26  Panasonic-branded products from Panasonic's wholly-owned United States subsidiary,
    Panasonic Corporation of North America.  The court does not suggest that it would (or would

27  not) make a difference in today's ruling if Panasonic Corporation of North America was the
    entity from which Costco made its purchases.

28  ORDER – 5

into the United States.  The *Hsiung* court favorably cited the Seventh Circuit's pronouncement that "transactions that are directly between the [U.S.] plaintiff purchasers and the defendant cartel members *are* the import commerce of the United States . . . ." 758 F.3d at 1090 (quoting *Minn-Chem, Inc. v. Agrium Inc.*, 683 F.3d 845, 855 (7th Cir. 2012)) (alterations in *Hsiung*, emphasis in original).  Following the reasoning of *Hsiung*, the court rules that any purchase between Costco and a foreign conspirator is import commerce to which FTAIA does not apply.

Assuming that Panasonic was a conspirator, Costco's purchases of Panasonic televisions that Daewoo and Quanta assembled for Panasonic are also "import commerce" within the meaning of the FTAIA.  The court finds no reason to distinguish sales of televisions that non-conspirators assembled where the panels in those televisions came from conspirators and the finished products were returned to a conspirator for sale to Costco.  Costco's purchases from foreign conspirators of finished products containing price-fixed panels are import commerce, regardless of the supply chain that brought the finished product to the conspirator who made the sale.

For these reasons, Defendants are not entitled to judgment as a matter of law. Even if the court could ignore Defendants' failure to bring their motion in the MDL court, it could not ignore that the application of the FTAIA to the Panasonic purchases depends on (among other things) whether Panasonic conspired with Defendants.[5]  The jury will decide whether Panasonic conspired.

## C.   The FTAIA Would Not Mandate Summary Judgment to Defendants Even If Panasonic Is Not a Conspirator.

Although Defendants are not entitled to summary judgment, the court must eventually address the parties' legal disputes over the FTAIA.  The court has yet to

---

[5] Defendants do not respond to Costco's contention that even if the court were to rule that the FTAIA doomed its federal antitrust claim based on the Panasonic purchases, Costco can still recover damages for those purchases (although not the same remedies) via the Washington Consumer Protection Act.  It appears that even a ruling in Defendants' favor on this motion would not change the evidence Costco presents at trial.

ORDER – 6

wrestle with the nearly 300 pages of briefing related to the parties' agreed and disputed proposals for jury instructions (Dkt. ## 544, 545), but the court is certain that their disputes about the FTAIA crop up again there. Accordingly, the court interprets the FTAIA. It does so in the context of deciding how the FTAIA would apply (or not) to Costco's Panasonic purchases if the jury were to conclude that Panasonic did not conspire with Defendants.

### 1.      Import Trade

The court has already addressed several types of commerce that are import commerce according to *Hsiung*. *Hsiung* holds that a sale of a price-fixed product from a foreign conspirator to a customer in the United States is import trade within the meaning of the FTAIA. 758 F.3d at 1090. Moreover, the *Hsiung* court's citation of *Minn-Chem* leaves this court with no doubt that *Hsiung* also stands for the proposition that, provided the price-fixed product ultimately moved from a member of the conspiracy to a United States customer, the conspirators have engaged in import trade regardless of prior movement of the price-fixed product in foreign commerce among the conspirators. In *Minn-Chem*, the court considered an international potash (a mineral commodity used primarily in fertilizer) cartel consisting of international producers, international sales entities, and international distributors. 683 F.3d 845. Movement from the cartel's producers to its sellers to its distributors (not to mention movement involving joint ventures among the cartel members, *id.* at 850-51) was of no concern to the *Minn-Chem* court. *Id.* at 855 (finding "no question" that purchases by United States customers "directly from members of the alleged cartel" are "import commerce" to which the FTAIA does not apply). As the court has already noted, the *Hsiung* court cited that portion of *Minn-Chem* favorably. *Hsiung*, 758 F.3d at 1090.

As the court has already noted, it makes no difference for purposes of identifying "import trade" beyond the scope of the FTAIA that a cartel incorporates a price-fixed good into a finished product. That the *Hsiung* court had no occasion to consider this

ORDER – 7

factual circumstance is no reason to conclude that its legal reasoning is any less applicable to it.  No one suggests any reason that Defendants should be able to take shelter in the FTAIA by the simple expedient of having a conspirator incorporate the price-fixed panels into finished products for sale into the United States.

The *Hsiung* court declined to "determine the outer bounds of import trade . . . ." 758 F.3d at 1090 n.7.  In particular, it declined to decide whether it agreed with the Third Circuit's conclusion that import commerce is any conduct that "targets" or is "directed at" the United States import market.  *Animal Science Prods., Inc. v. China Minmetals Corp.*, 654 F.3d at 470, 471 (3d Cir. 2011); *Hsiung*, 758 F.3d at 1090 n.7.

With no binding precedent to follow, this court will not determine the outer bounds of import trade either.  It is not clear, particularly in light of the court's conclusions as to the FTAIA's domestic-effect exception in the next subsection, whether this case will require jury instructions that define import trade more broadly than the *Hsiung* court defined it.  The court does not rule out, however, that it will incorporate a broader definition in jury instructions.

## 2.     Domestic-Effect Exception

Although the *Hsiung* court focused on AU Optronics's sales of *panels* directly to customers in the United States, it also considered evidence that AU Optronics had sold panels abroad for assembly into finished products that reached the United States.  758 F.3d at 1093-94.  The court declined to decide whether that evidence proved import trade.  The court did, however, consider whether that evidence sufficed to meet the FTAIA's domestic-effect exception.  *Id.* at 1093.

The court summarized the government's domestic-effect evidence as follows:

> [T]he government's expert created some ambiguity regarding "the exact flow of how panels go from the plants of the Crystal Meeting participants into a product, to a — what are called an 'OEM' — the computer maker — and get to the United States."  Admitting that there was "not good data" on how the price-fixed panels wound up in finished consumer goods sold in the United States, the expert explained that "[f]or example, Dell may have someone else put together the monitor," and that assemblers for panels

ORDER – 8

were located in China, Singapore, Taiwan, Japan, and Mexico. Although
negotiations took place in the United States, and there is no dispute that
customers in the United States purchased finished products containing the
price-fixed TFT-LCDs, such as computer monitors and laptop computers,
this testimony raises a significant question regarding whether the effects
were sufficiently direct to uphold a verdict based on the domestic effects
claim.

*Hsiung*, 758 F.3d at 1093-94. It reiterated the holding of *LSL Biotechs.* as to the meaning

of "direct" effect and the holding of *DRAM* as to the meaning of the FTAIA's

requirement that the domestic effect "gives rise to" the plaintiff's Sherman Act claim. *Id.*

at 1094. But because AU Optronics's panel imports were a sufficient basis to uphold its

conviction, the court did "not resolve whether the evidence of defendants' conduct was

sufficiently 'direct,' or whether it 'give[s] rise to an antitrust claim' . . . ." *Id.* The court

observes, however, that Defendants advocate a view of the FTAIA under which the

evidence in *Hsiung* would not have raised "substantial questions" about whether the

purchases are sufficiently direct. In Defendants' view, because their initial sales of

panels were in foreign commerce, and Costco bought only finished products, there was

no "direct" effect within the meaning of the FTAIA as a matter of law. That was plainly

not the view of the *Hsiung* court, which found instead that evidence showing foreign

sales of panels assembled into finished products abroad were at least worthy of inquiry.

Evidence of Costco's purchases from Panasonic is much simpler than the evidence

that raised "significant questions" for the *Hsiung* court. Assuming that Costco's

purchases from Panasonic were not purchases from a conspirator, a jury might have to

decide whether Costco has established the domestic-effect exception.[6] The short answer

is that Costco may be able to prove as much at trial.

Costco concedes that it cannot prove that Defendants fixed the prices of finished

products, but among the assertions that Costco hopes to prove at trial is that the "direct,

substantial, and reasonably foreseeable effect" of Defendants' foreign conduct is to raise

---

[6] If Costco's purchases from Panasonic were not purchases from a conspirator, then Costco has
the additional burden of proving that Panasonic was in a control relationship with a conspirator.
Sept. 11, 2014 ord. (Dkt. # 558).

ORDER – 9

the prices of finished products.  As applied to Costco's purchases of finished products from non-conspirators abroad, the foreign conduct of Defendants at issue is fixing prices of TFT-LCD panels for sale to foreign finished-product assemblers.  As a general matter, determining how or if the increased cost of a component increases the cost of a finished product is complicated.  In a competitive market, an increased component cost can have any number of direct effects, and it is possible that any impact on the price of the finished product will be indirect.  In this case, however, Costco intends to present evidence that the sale of commodity panels to finished product manufacturers *directly* – as an immediate consequence not depending on uncertain developments – increased the cost of finished products.  The court suggests no opinion on whether Costco can succeed in that endeavor, but there is no basis to stop it from attempting to do so at trial.

Defendants do not contest that the increased cost of finished products was "substantial" and "reasonably foreseeable."  Given Costco's evidence of Defendants' gains from the conspiracy, its "substantial" impact seems undisputable.  Defendants sold many of their price-fixed panels to their own subsidiaries, which is an odd choice if they did not believe they would eventually profit from increased finished-product profits at those subsidiaries.  This suggests that increased finished product prices were not only "reasonably foreseeable," they were actually foreseen.

The "direct, substantial, and reasonably foreseeable" effect the court has just discussed is an effect on *import commerce*.  There is no dispute that some (a "substantial" number, at least) of the finished products whose prices Defendants' conduct arguably directly effected were products for import into the United States (to Costco and others).

Finally, if the direct effect of Defendants' foreign conduct was to raise the price of finished products for import, there is little question that Costco's claim as to its Panasonic purchases "arises from" that effect.

ORDER – 10

### 3.      Rulings in Motorola's Case Against Defendants Do Not Dictate the Result Defendants Prefer in this Case.

Before concluding, the court considers Defendants' contention that *Motorola Mobility, Inc. v. AU Optronics Corp.*, No. 09 C 6610, 2014 U.S. Dist. LEXIS 8492 (N.D. Ill. Jan. 23 2014), another of the cases that spun off from the MDL proceedings, supports their view of the domestic-effect exception in the FTAIA.  *Motorola* returned last year to the Northern District of Illinois after pretrial proceedings in the MDL court.  It differs fundamentally from this case in that plaintiff Motorola purchased panels, not finished products, from the conspirators.  *Id.* at *8.  Moreover, in contrast to Costco's import purchases from Panasonic, as to all but a tiny fraction of the purchases, Motorola did not purchase panels itself, it relied on its foreign subsidiaries.  *Id.*  Because Defendants sold the price-fixed panels to those subsidiaries abroad, both the MDL court and the Illinois court concluded that they were not addressing "import trade" within the meaning of the FTAIA.  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2010 U.S. Dist. LEXIS 65037, at *18-19 (N.D. Cal. Jun. 28, 2010) (noting that Motorola alleged that "the foreign-purchased [panels] were brought to the United States by Motorola affiliates," not Defendants); *Motorola Mobility*, 2014 U.S. Dist. LEXIS 8492, at *37-38 (declining to reconsider MDL court's "import trade" ruling).  As to the application of the domestic-effect exception, the Illinois court concluded that the domestic effect to which Motorola pointed – that it negotiated with Defendants in the United States the panel prices that its foreign subsidiaries paid – did not give rise to Motorola's Sherman Act claim.  *Id.* at *29-30, *36.  The Illinois court concluded that it was the overall conspiracy, not the domestic effect to which Motorola pointed, that gave rise to Motorola's claim.  *Id.* at *36.[7]  It thus granted Defendants' motion to reconsider that portion of the MDL court's ruling.

---

[7] A Seventh Circuit panel affirmed the Illinois court in March 2014, but the Seventh Circuit vacated that decision when it decided to rehear the appeal en banc.  *Motorola Mobility LLC v. AU Optronics Corp.*, No. 14-8003, 2014 U.S. App. LEXIS 12704 (7th Cir. July 1, 2014).  The court takes judicial notice of the Seventh Circuit's docket, which reveals that the en banc court will hear arguments in November of this year.

ORDER – 11

1    The *Motorola* case is distinguishable from this one.  Costco made purchases on its

2    own behalf, not through foreign subsidiaries.  It has no need to step into any other entity's

3    shoes to assert a claim.  In addition, Costco's purchases were, unlike the panel purchases

4    in *Motorola*, purchases in import commerce.  As the court has noted, the direct effect of

5    Defendants' foreign price-fixing conduct was (or at least a jury could conclude it was) to

6    raise the price of those imports, which in turn gives rise to Costco's claims.  *Motorola*, in

7    short, is inapposite.

8        To the extent the court were to look to the MDL court's rulings on the FTAIA for

9    guidance in interpreting the domestic-effect exception, the MDL court's ruling in the

10   indirect purchaser class action is much more pertinent to Costco's case than its ruling in

11   Motorola's case.  In the indirect purchaser class action, the MDL court considered

12   Defendants' claim that they could not be held liable for panel sales that they made

13   abroad.  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 822 F. Supp. 2d 953, 955-56 (N.D.

14   Cal. 2011).  The MDL court accepted, for purposes of the motion before it, Defendants'

15   articulation of the chain of transactions that brought the price-fixed TFT-LCD panels to

16   the United States.  That chain, just like the chain involved in this case, began with

17   Defendants' manufacture of panels abroad, their sales of those panels to foreign

18   assemblers, the assemblers' foreign assembly of finished products containing the panels,

19   and the assemblers' sale of those products to either domestic or foreign electronics

20   companies, which then sold them to retailers in the United States.  *Id.* at 961.  The court

21   concluded that despite the steps in the supply chain between Defendants' sales of price-

22   fixed panels and the sale of finished products in domestic commerce, the direct effect of

23   the panel sales was to increase the price of finished products in the United States.  *Id.* at

24   966 ("The increased price of the components cause the prices of the finished products in

25   the United States to increase.  If this effect is not 'direct,' it is difficult to imagine what

26   would be.").  In Costco's case, at least as applied to its Panasonic purchases, the supply

27   chain is much simpler.  Defendants sold panels to Panasonic or assemblers operating on

28   ORDER – 12

Panasonic's behalf, Panasonic sold the assembled products to Costco.  Defendants cannot prevent Costco from allowing the jury to decide whether the effect of the panel sales on the price of the finished-product imports was direct.

### III.  CONCLUSION

For the reasons previously stated, the court DENIES Defendants' summary judgment motion.  Dkt. # 486.

DATED this 22nd day of September, 2014.

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 13