HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

COSTCO WHOLESALE CORPORATION,

             Plaintiff,

      v.

AU OPTRONICS CORPORATION, et al.,

             Defendants.

CASE NO. C13-1207RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on an issue Defendants first raised in their motion in limine.  After hearing from the parties at a September 12 pretrial conference, the court reserved ruling and ordered supplemental briefing.  The court has reviewed the supplemental briefing and is now prepared to rule.

## II.  DISCUSSION

Defendants' motion in limine included a request that the court exclude evidence related to what Defendants called "umbrella theory" damages.  The motion specifically targeted evidence that Costco would present primarily (or perhaps entirely) through expert witness Dr. Douglas Bernheim.  Dr. Bernheim will testify, apparently, that 5 to 10 percent of Costco's damages are based on finished product purchases for which the embedded price-fixed panel may have come from unnamed "minor players" in the TFT-LCD market.  Because, in Defendants' view, those "minor players" were not members of their price-fixing conspiracy, Costco could not recover those damages.  Defendants

ORDER – 1

likened those damages to a damage theory that the court in *In re Petroleum Products Antitrust Litig.*, 691 F.2d 1335 (9th Cir. 1982) declined to recognize.

*Petroleum Products* concerned an effort by several states' attorneys general to recover on behalf of citizens who had bought gasoline at a higher price because of a conspiracy among oil companies. 691 F.2d at 1337. Among other things, the states asserted that even non-conspiring oil companies raised their gas prices because the conspiracy created a "price umbrella" under which the non-conspirators could raise their prices without fear of being undercut. *Id.* at 1338. The states thus asserted that they could recover even based on their citizens' purchases from non-conspiring oil companies.

The *Petroleum Products* court did not rule on the viability of the states' "umbrella theory." Instead, the court ruled that in light of the (then fairly recent) decision in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), which generally limited standing to pursue antitrust claims for price fixing to the initial purchaser of the price-fixed good, the states could not recover "umbrella" damages because their citizens did not purchase gas directly from *any* oil company, conspirator or otherwise. *Id.* at 1340. They instead purchased from a retailer who was one or more sales removed from the initial sale of gasoline from an oil company to a distributor. The court noted, moreover, that proof of the umbrella claims would invoke the many of the same concerns about evidentiary complexity and double recovery that underlie the *Illinois Brick* rule. *Id.* at 1340-41. The court declined to decide "whether, in a situation involving a single level of distribution, a single class of direct purchasers from non-conspiring competitors of the defendants [could] assert claims for damages against price-fixing defendants under an umbrella theory." *Id.* at 1340.

The *Petroleum Products* court had no reason to opine about the situation this court faces: a multi-level distribution scheme, but one in which Costco seeks to take advantage of the control exception to the *Illinois Brick* rule. The court has discussed the control exception in a previous summary judgment order, Sept. 11, 2014 ord. (Dkt. # 558), and does not repeat that discussion here. It suffices to say that whether a plaintiff in Costco's

ORDER – 2

shoes (a purchaser at least one transaction away from the price-fixing conspirators, but with a viable claim that an exception to *Illinois Brick* applies) can take advantage of the umbrella theory is a question that *Petroleum Products* does not answer. *Petroleum Products* is a straightforward application of *Illinois Brick* to indirect purchasers who happened to seek umbrella theory damages, it does not decide the viability of the umbrella theory in a case like this one, where Costco may be able to take advantage of the control exception to the *Illinois Brick* rule.

What's more, Costco tells the court, is that it may not actually be invoking the "umbrella theory." Costco contends that whether the "minor players" were conspirators is a question of fact that the jury must decide. It makes this assertion despite admitting that it lacked enough evidence to even allege in its complaint that any of the "minor players" were conspirators. In addition, Costco contends that it is possible that none of the panels that ended up in the finished products it purchased actually came from the "minor players." Defendants assert that Costco has no evidence to prove either of those contentions.

The parties' arguments over what Costco's evidence might show are not proper subjects for motions in limine, they are at best subjects for summary judgment motions the parties should have brought long ago. The court does not understand why the parties, who each have dozens of lawyers and who each brought dozens of summary judgment motions in the MDL court, did not resolve this issue long ago. The court will not, at this late date, decide in the guise of a motion in limine whether Costco can prove that it did not purchase finished products containing panels from the "minor players," and it will not decide whether Costco can prove that those minor players were conspirators. That statement is without prejudice to a proper post-trial motion or motion at the close of evidence. If Costco believes that it can prevail on either of those factual disputes by inviting the jury to speculate, it is mistaken. If those disputes reach the jury, the jury will be instructed that it may not speculate as to whether the "minor players" produced panels

ORDER – 3

that ended up in Costco's finished products or whether the "minor players" were conspirators.

In assessing the viability of the umbrella theory, the Supreme Court's decision in *Associated General Contractors of Cal. ("AGC") v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983) helps fill in the answers that *Petroleum Products* (which came a year before *AGC*) did not provide. *AGC* concluded that § 4 of the Clayton Act (15 U.S.C. § 15), which permits a suit for treble damages by a person "injured in his business or property by reason of anything forbidden in the antitrust laws," did not permit suit for "every harm that can be attributed directly or indirectly to the consequences of an antitrust violation." 459 U.S. at 529. Instead, the Court articulated a number of factors that guide a court's inquiry in determining whether an injury is too remote from an antitrust violation. Those factors include the nature of the injury, the potential for duplicative recovery or complex apportionment of damages, and the existence of more direct victims of the conspiracy. *Id.* at 545. In *AGC*, the court ruled that unions could not sue to recover damages for a boycott organized by a general contractor group to divert work away from subcontractors who had signed agreements to use union labor. *Id.* at 527-28, 545. Even though the unions had arguably been injured by receiving less work from subcontractors as a result of the boycott, the Court found their injury too far removed from the association's antitrust violation.

The court now considers application of the *AGC* factors to Costco's "umbrella claim," assuming it brings one. Costco's theory is that to the extent the "minor players" were not conspirators, they charged a supracompetitive price for panels because they could afford to do so under the umbrella of the conspiracy. Costco's injury and the link between it and Defendants' conduct is easy enough to articulate: Costco contends that it paid more for finished products containing panels from non-conspiring "minor players" as result of the conspiracy. The question, as it was in *AGC*, is whether the Clayton Act "affords a remedy" for that injury. 459 U.S. at 537.

ORDER – 4

The biggest hurdle to Costco's umbrella claim is the nature of the injury it articulates. The court puts aside for the moment that Costco did not purchase panels from anyone, including the "minor players." Costco would have to present evidence showing that the "minor players" charged their higher panel prices because of the conspiracy, not for independent reasons. Minor players might charge more in a perfectly competitive market because they operate less efficiently than their larger competitors and do not sell in sufficient volume to weather smaller profit margins. The court expects that economists and others would proffer a variety of other possibilities. It suffices for now to say that the initial hurdle to Costco's version of the umbrella theory is that the nature of the injury it claims means it will have to prove that the higher prices it paid were actually the result of the conspiracy. Part of the second reason that the *Petroleum Products* court gave for rejecting the claims before it was that it feared a "complex judicial inquiry into the pricing decisions of sellers remote from plaintiffs." 691 F.2d at 1341 ("Under an umbrella theory, the result of any attempt to ascertain with reasonable probability whether the non-conspirators' prices resulted from the . . . conspiracy or from numerous other pricing decisions would be speculative to some degree."). That is a serious concern in this case as well.

As to whether there are more direct victims who could sue for the injury Costco claims, the record is not clear. Costco contends that at least some (and perhaps all) of the "minor player" panels at issue were sold either to conspirators or to entities in control relationships with conspirators. There is no question (as the court has discussed in other orders) that Costco contends that its ultimate purchases of finished products were from vendors in control relationships with conspirators. If that is the case, there are no more direct victims who can be expected to sue for the injury inflicted. On the other hand, if entities who were neither conspirators nor in control relationships with conspirators purchased the "minor player" panels at issue, they are the direct victims, and Costco stands at too far a remove from the injury it claims.

ORDER – 5

1    There is no question that determining how much of an overcharge Costco paid for

2    finished products as a result of panel overcharges is a complicated question – or more

3    likely a series of complicated questions.  The existence of those complicated questions

4    was another part of the *Petroleum Products* court's second reason for rejecting the

5    consumer claims before it.  691 F.2d at 1341 (noting that in a "multi-tiered distribution

6    system," the "causal effect of each pricing decision would have to be pursued through the

7    chain of distribution").  But the court (and the MDL court) have already addressed those

8    complicated questions in the context of deciding whether Costco may recover for its

9    purchases of finished products containing panels that Defendants and their conspirators

10   manufactured.  Some of them are put to rest by the "full overcharge" rule of *Royal

11   Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323 (9th Cir. 1980), which the court

12   applied in resolving the remainder of the parties' motions in limine.  Sept. 17, 2014 ord.

13   (Dkt. # 569).  Others, including questions about whether the cost of a panel has a direct

14   effect on the cost of a finished product, are issues that the jury must decide.  Sept. 22,

15   2014 ord. (Dkt. # 575).  In short, Costco's claims will require the court and the jury to

16   tackle the evidentiary complexities that the *Petroleum Products* court feared regardless of

17   Costco's umbrella damages.  Eliminating the umbrella theory would not make the

18   economic inquiries less complex.

19      Weighing all of these considerations, the court rules that except as to panels sold

20   by non-conspiring "minor players" to entities who were neither conspirators nor in a

21   control relationship with conspirators, Costco has standing to pursue its version of the

22   umbrella theory.  It is possible that evidence presented (or not presented) at trial will

23   place this issue in sharper relief, and the court rules today without prejudice to any

24   appropriate motion after the close of evidence.

25      The court is aware that the MDL court rejected a similar version of the umbrella

26   theory in addressing a summary judgment motion in a case involving retailers similarly

27   situated to Costco.  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M07-1827 SI, 2012

28   ORDER – 6

U.S. Dist. LEXIS 182374, at *59-65 (N.D. Cal. Dec. 26, 2012).  There, the plaintiffs apparently conceded that *Petroleum Products* was a bar to federal claims invoking the umbrella theory.  *Id.* at *59.  The MDL court also surveyed recent federal authority, concluding that "most federal courts in recent years have rejected [umbrella theory] claims."  *Id.* at *60-61.  The court appreciates the MDL court's analysis, and departs from it only to the extent that it suggests that *Petroleum Products* forecloses an umbrella theory claim.  The court today rules only that in this context, faced with an eve-of-trial motion to knock out a significant portion of a plaintiff's case, Costco has articulated a version of the umbrella theory that can at least proceed to trial.

The court notes that the parties agree that it will be easy enough to have Dr. Bernheim specify how his damage calculations would change if Costco cannot recover for purchases of finished products containing panels manufactured by non-conspirators. The jury or the court will thus be able to segregate any damages traceable to "minor players."  In these circumstances, cross-examination is a better remedy than exclusion to address evidence relevant to the umbrella theory.

### III.  CONCLUSION

For the reasons previously stated, the court denies the portion of Defendants' motion in limine seeking to exclude evidence relevant to the "umbrella theory."

Dated this 23rd day of September, 2014.

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 7