THE HONORABLE RICHARD A. JONES

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

8

WESTERN DISTRICT OF WASHINGTON

9

AT SEATTLE

10 | COSTCO WHOLESALE CORPORATION,      Case No. 2:13-cv-01207-RAJ

11 |          Plaintiff,                **DEFENDANTS' COMBINED MOTIONS**
                                        **FOR [1] JUDGMENT AS A MATTER OF**
12 |                                    **LAW (FRCP 50); [2] IN THE**
                                        **ALTERNATIVE, FOR A NEW TRIAL**
13 | AU OPTRONICS CORPORATION, et al.,  **(FRCP 59); AND [3] AMENDMENT OF**
                                        **FINDINGS IN BENCH TRIAL (FRCP**
14 |          Defendants.               **52(b))**

15                                      **[CITED TRIAL EXHIBITS AND MDL**
                                        **ORDERS FILED CONCURRENTLY]**
16
                                        **[ORAL ARGUMENT REQUESTED]**
17
                                        **Noted on Motion Calendar: August 21, 2015**
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ

27217974.2

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................................................1

II.  STANDARDS FOR DIRECTING ENTRY OF JUDGMENT OR ORDERING
NEW TRIAL................................................................................................................4

    A.  Motion for Judgment As a Matter of Law ..............................................................4

    B.  Motion for New Trial ..............................................................................................5

III.  THE JURY COULD NOT REASONABLY HAVE FOUND THAT COSTCO
PAID OVERCHARGES OR WAS OTHERWISE INJURED ...................................5

    A.  Costco Had to Prove That It Suffered an Injury to Its Business or Property
As a Result of Defendants' Conduct.......................................................................5

    B.  Costco Failed to Show That It Paid Any Overcharges ...........................................6

        1.  The Evidence Was Insufficient to Show the Source of the LCD
Panels in Costco's Purchases ....................................................................6

        2.  The Evidence Was Insufficient to Show the Price-Fixing of LCD
Panels Inflated the Prices of the Finished Products ...................................9

IV.  COSTCO DID NOT ESTABLISH THAT ITS INJURY OCCURRED IN THE
SAME MARKET IN WHICH COMPETITION WAS BEING RESTRAINED.............12

V.  THE JURY COULD NOT REASONABLY HAVE FOUND THAT COSTCO'S
CLAIMS WERE PERMITTED UNDER THE FTAIA ......................................15

    A.  Costco Did Not Prove Any Transactions Between a Member of the
Conspiracy and a U.S. Customer ..........................................................................16

    B.  The Evidence Was Insufficient to Satisfy the Domestic Effects Exception..........16

VI.  *ROYAL PRINTING* DID NOT RELIEVE COSTCO OF THE OBLIGATION TO
PROVE ANTITRUST INJURY AND/OR AN EFFECT ON DOMESTIC
COMMERCE.............................................................................................................18

    A.  *Royal Printing's* Upstream Pass-On Analysis Does Not Apply to a
"Component" Case.................................................................................................19

    B.  *Royal Printing* Does Not Extend to *AGC's* Standing Requirements....................21

    C.  *Royal Printing* Does Not Affect the FTAIA's Requirements...............................22

VII.  ALTERNATIVELY, THE JURY COULD NOT REASONABLY HAVE
FOUND THAT ROYAL PHILIPS AND PANASONIC WERE CO-
CONSPIRATORS.......................................................................................................23

    A.  The Evidence Was Insufficient to Show That Royal Philips Participated in
the Conspiracy ......................................................................................................23

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ

i

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

27217974.2

# TABLE OF CONTENTS
## (continued)

                                                  **Page**

B.    The Evidence Was Insufficient to Show That Panasonic Participated in the Conspiracy ............................................................................................24

VIII.    THE COURT SHOULD AMEND ITS FINDINGS THAT COSTCO HAD STANDING TO SUE ........................................................................................26

A.    The Court Should Amend Its Conclusion That Wholly Owned Subsidiaries of Conspirators or Conspirators Subsidiaries Were "Controlled" by Members of the Conspiracy ........................................27

B.    The Court Should Amend Its Conclusion That the Control Exception Applied to JVC Even After Panasonic's Equity Interest Declined to Less Than a Majority........................................................................................28

IX.    CONCLUSION .............................................................................................30

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ

ii

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

27217974.2

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
   190 F.3d 1051 (9th Cir. 1999) .......................................................................13, 15

*Amerinet, Inc. v. Xerox Corp.*,
   972 F.2d 1483 (8th Cir. 1992) ...................................................................................6

*Apple Inc. v. Psystar Corp.*,
   586 F. Supp. 2d 1190 (N.D. Cal. 2008) ...................................................................13

*Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*,
   241 F.3d 696 (9th Cir. 2001) ...................................................................................13

*Assoc. Gen. Contractors of Cal. v. Cal. State Council of Carpenters*,
   459 U.S. 519 (1983)...........................................................................................2, 12, 15

*Barnes v. Arden Mayfair, Inc.*,
   759 F.2d 676 (9th Cir. 1985) .....................................................................................4

*Bhan v. NME Hosps., Inc.*,
   772 F.2d 1467 (9th Cir. 1985) .................................................................................13

*Bubar v. Ampco Foods, Inc.*,
   752 F.2d 445 (9th Cir. 1985) ...................................................................................15

*Eagle v. Star–Kist Foods, Inc.*,
   812 F.2d 538 (9th Cir. 1987) ...................................................................................13

*F. Hoffmann-LaRoche Ltd. v. Empagran S.A.*,
   542 U.S. 155 (2004).................................................................................................15

*Fed. Ins. Co. v. HPSC, Inc.*,
   480 F.3d 26 (1st Cir. 2007).........................................................................................1

*Flintkote Co. v. Lysfjord*,
   246 F.2d 368 (9th Cir. 1957) .....................................................................................6

*Freeman v. San Diego Ass'n of Realtors*,
   322 F.3d 1133 (9th Cir. 2003) .................................................................................29

*Houston Gen. Ins. Co. v. St. Paul Fire & Marine Ins. Co.*,
   No. C11-2093-MJP, 2013 WL 4809274
   (W.D. Wash. Sept. 9, 2013)......................................................................................26

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ

iii

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

27217974.2

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Illinois Brick Co. v. Illinois*,
431 U.S. 720 (1977)................................................................................19, 20

4

5

*In re ATM Fee Antitrust Litig.*,
686 F.3d 741 (9th Cir. 2012) ................................................ *passim*

6

*In re Auto. Parts Antitrust Litig.*,
50 F. Supp. 2d 836 (E.D. Mich. 2014)....................................................21

7

8

*In re Citric Acid Litig.*,
996 F. Supp. 951 (N.D. Cal. 1998) ........................................................23

9

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
536 F. Supp. 2d 1129 (N.D. Cal. 2008) .................................................14

10

11

*In re Graphics Processing Units Antitrust Litig.*,
540 F. Supp. 2d 1085 (N.D. Cal. 2007) .................................................21

12

13

*In re Optical Disk Drive Antitrust Litigation*,
303 F.R.D. 311 (N.D. Cal. 2014)...........................................................12

14

15

*In re Plastics Additive Antitrust Litig.*,
No. 03-CV-2038, 2010 WL 3431837 (E.D. Pa. Aug. 31, 2010) ............11

16

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
No. 07-md-01819 CW, 2010 WL 5071694
(N.D. Cal. Dec. 7, 2010) ......................................................................7, 8

17

18

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
586 F. Supp. 2d 1109 (N.D. Cal. 2008) .................................................14

19

20

*In re Vitamin C Antitrust Litig.*,
279 F.R.D. 90 (E.D.N.Y. 2012).................................................27, 28, 29

21

22

*Jewish Hosp. Ass'n v. Steward Mech. Enters. Inc.*,
628 F.2d 971 (6th Cir. 1980) ................................................................27

23

*Kansas v. Utilicorp United, Inc.*,
497 U.S. 199 (1990).....................................................19, 21, 22, 30

24

25

*Lakeside-Scott v. Multnomah Cnty.*,
556 F.3d 797 (9th Cir. 2009) ..................................................................4

26

27

*Lubic v. Fid. Nat'l Fin., Inc.*,
No. C08-0401 MJP, 2009 WL 2160777 (W.D. Wash. July 20, 2009)....12

28

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

iv

27217974.2

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Lujan v. Defenders of Wildlife,*
        504 U.S. 555 (1992)..............................................................................15

4

5

*McDowell v. Calderon,*
        197 F.3d 1253 (9th Cir. 1999) ............................................................26

6

*Mercedes-Benz USA, Inc. v. Coast Auto. Grp., Ltd.,*
        362 F. A'ppx 332 (3d Cir. 2010) .........................................................12

7

8

*Mid-West Paper Prods. Co. v. Cont'l Grp., Inc.,*
        596 F.2d 573 (3d Cir. 1979)...................................................................6

9

*Molski v. M.J. Cable, Inc.,*
        481 F.3d 724 (9th Cir. 2007) .................................................................5

10

11

*Montgomery Ward & Co. v. Duncan,*
        311 U.S. 243 (1940).................................................................................5

12

*Motorola Mobility LLC v. AU Optronics Corp.,*
        775 F.3d 816 (7th Cir. 2015) ...............................................................18

13

14

*Murphy v. City of Long Beach,*
        914 F.2d 183 (9th Cir. 1990) .................................................................5

15

16

*Nat'l Metal Finishing Co. v. BarclaysAmerican/Commercial, Inc.,*
        899 F.2d 119 (1st Cir. 1990)................................................................27

17

*Ostad v. Oregon Health Scis. Univ.,*
        327 F.3d 876 (9th Cir. 2003) .................................................................4

18

19

*Royal Printing Co. v. Kimberly Clark Corp.,*
        621 F.2d 323 (9th Cir. 1980) .....................................................3, 19, 22

20

*United States v. Hui Hsiung,*
        778 F.3d 738 (9th Cir. 2015) .....................................................16, 17, 22

21

22

*United States v. LSL Biotechnologies,*
        379 F.3d 672 (9th Cir. 2004) .........................................................16, 22

23

*Willis v. Marion Cnty. Auditor's Office,*
        118 F.3d 542 (7th Cir. 1997) ...............................................................24

24

25

**FEDERAL STATUTES**

26

15 U.S.C. § 6a .............................................................................................15

27

28

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ

v

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

27217974.2

# TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

Sherman Act § 15(a) ...................................................................................................22

**FEDERAL RULES**

Fed. R. Civ. P. 50(a) .....................................................................................................4

Fed. R. Civ. P. 50(b) ..............................................................................................1, 4, 5

Fed. R. Civ. P. 52(b) .....................................................................................................1

Fed. R. Civ. P. 59 ..........................................................................................................5

**TREATISES**

5A James W. Moore, et al., Moore's Federal Practice (2d ed. 1996)............................27

Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law  (3d ed. 2007) ......................13

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ

vi

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

27217974.2

Defendants LG Display Co., Inc., and LG Display America, Inc. (collectively, "LG Display") and AU Optronics Corporation and AU Optronics Corporation America (collectively, "AUO") submit this brief in support of their combined motions for judgment as a matter of law or, alternatively, for a new trial with respect to issues tried by the jury, and in support of their motion for amendment of the findings made by the Court in the bench trial (Dkt. 681) (the "Bench Trial Order").   Parts I-VII of this brief address the reasons for directing entry of judgment in Defendants' favor or, alternatively, ordering a new trial.   Part VIII argues that the Bench Trial Order should be amended.[1]

## I.   INTRODUCTION

Costco recovered nearly $62,000,000 in antitrust damages without ever showing that it paid an illegally fixed price.   This Court should direct entry of judgment in favor of Defendants because Costco's damages model—the sole basis for its damages calculation—did not determine the amount of overcharges Costco actually paid.   Costco's expert in fact conceded that his damages figures would have been the same even if Costco had purchased all of the products at issue for nothing.   On this record, no reasonable jury could have found that Costco suffered injury.

The evidence at trial established that Defendants and others fixed the prices of certain LCD panels sold in Asia, on the one hand, and that Costco purchased finished products containing LCD panels in the United States, on the other.   Defendants did not dispute at trial that price-fixing occurred.   But the law does not allow every purchaser in the supply chain to recover damages for price-fixed products.   Costco itself never purchased an LCD panel from Defendants

---

[1] Defendants recognize that certain of the arguments made herein with respect to the jury's findings overlap, to some degree, with issues addressed by the Court in the Bench Trial Order. Defendants re-argue those issues here to preserve their right to argue on appeal that the evidence submitted to the jury was insufficient to support the verdict. *See* Fed. R. Civ. P. 50(b). Defendants also reserve the right to challenge the Bench Trial Order in its entirety but in this brief have moved to amend only those findings not addressed in the supplemental briefing ordered by this Court prior to the entry of judgment. *See* Dkt. 671; Fed. R. Civ. P. 52(b); *Fed. Ins. Co. v. HPSC, Inc.*, 480 F.3d 26, 32 (1st Cir. 2007).

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ                          -1-
27217974.2

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

1  or any other conspiring panel manufacturer.  To recover damages based on its purchases of

2  finished LCD products, Costco had to prove that Defendants' price-fixing of LCD panels

3  increased the prices of those finished products.

4  Costco failed entirely to make this showing: its percipient witnesses had no knowledge as

5  to what entity manufactured the LCD panels in the products Costco purchased; it put on no proof

6  as to how or whether the panels moved in commerce from foreign manufacturers to Costco; and

7  its damages expert, Dr. B. Douglas Bernheim, calculated only an industry-wide overcharge rate

8  for the panels, without taking into account the amount Costco actually paid.  Dr. Bernheim's

9  model provided no evidence that the conspiracy had any effect on Costco at all; in fact, he

10  conceded that *his tens of millions of dollars in estimated damages would have been exactly the*

11  *same even if Costco obtained the finished products for free*.  This admission—that the damages

12  calculation was entirely divorced from any calculation of overpayments actually made by

13  Costco—made it logically impossible for a reasonable jury to conclude, as this Court instructed

14  it must, that Costco suffered an injury to its business or property.

15  Costco's failure to prove a nexus between Defendants' price-fixing in the LCD panel

16  market and Costco's purchases in the television, laptop, and other finished product markets also

17  means that Costco did not prove the "antitrust injury" necessary to establish its standing under

18  *Associated General Contractors of California v. California State Council of Carpenters*, 459

19  U.S. 519 (1983) ("*AGC*").  At a minimum, as interpreted by the MDL court, *AGC* required

20  Costco to prove that Defendants' price-fixing in the LCD panel market had an effect on the

21  prices Costco paid for finished products—an effect that Costco's expert admittedly never

22  calculated.  Costco affirmatively argued—and persuaded the Court—to exclude evidence of any

23  such effect from the trial by successfully moving to prohibit any and all evidence concerning

24  pass-on of overcharges on LCD panels to and from Costco's vendors.

25  The same absence of proof means that Costco's claims are further barred by the Foreign

26  Trade Antitrust Improvements Act ("FTAIA"), which required Costco to prove that the foreign

27  price-fixed sales of LCD panels had a domestic effect on commerce in the United States.  In

28

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ                     -2-

27217974.2

1   denying Defendants' motion for partial summary judgment on the FTAIA prior to trial, this

2   Court relied on an expectation that Costco would "present evidence that the sale of commodity

3   panels to finished product manufacturers *directly* – as an immediate consequence not depending

4   on uncertain developments – increased the cost of finished products."  Dkt. 575 at 10.  Once it

5   successfully moved to exclude upstream pass-on evidence, however, Costco eliminated its ability

6   to make the expected showing at trial.  By refusing to present evidence that LCD panel

7   overcharges were in fact passed on to Costco in the prices it paid for finished products, Costco

8   could not and did not meet its burden under the FTAIA.

9        It is no answer to these problems to argue that the Ninth Circuit's decision in *Royal*

10  *Printing Co. v. Kimberly Clark Corp.*, 621 F.2d 323 (9th Cir. 1980), did away with the

11  requirements that a plaintiff show injury and antitrust standing, or that it lifted the limitations

12  imposed by the FTAIA.  *Royal Printing* relieves a plaintiff of the obligation to show that an

13  overcharge was passed down the distribution chain only if that plaintiff first proves that it

14  purchased the actual price-fixed products from a middleman owned and controlled by the price-

15  fixer.  *Royal Printing* did not address whether that same analysis could properly be applied

16  where, as here, it is undisputed that the plaintiff never purchased any price-fixed products.  Nor

17  does the limited ownership/control exception articulated in *Royal Printing* and its elimination of

18  a showing of upstream pass-on in the same product market undercut the requirement that a

19  plaintiff in a different market show an effect on finished product prices in order to establish its

20  antitrust standing.  And *Royal Printing*, which was decided prior to the enactment of the FTAIA,

21  could not erase the statute's requirement of proof that a conspiracy involving foreign sales have a

22  domestic effect—proof that, again, required a showing that overcharges on LCD panels were

23  passed on to Costco and that Costco affirmatively declined to present.

24       Although Costco managed to get through five weeks of trial skirting these issues, it is this

25  Court's job as the final arbiter of the judgment at the trial level to review the result and ensure

26  that it is legally correct.  Because Costco did not present the jury with evidence sufficient to

27  establish that Costco was injured, that it had antitrust standing, and/or that Defendants' conduct

28

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ                    -3-

27217974.2

had a direct effect on U.S. commerce, the current judgment should be vacated and judgment entered in Defendants' favor, or the case should be re-tried.

Alternatively, the amount of the judgment should be reduced because Costco's evidence was insufficient to show that either Royal Philips or Panasonic conspired with the Defendants to fix prices on LCD panels.  This failure of proof requires that Costco's single damages be reduced by $11,769,230, and the amount of the judgment recalculated accordingly.

## II.     STANDARDS FOR DIRECTING ENTRY OF JUDGMENT OR ORDERING NEW TRIAL

### A.     <u>Motion for Judgment As a Matter of Law</u>

The Court must grant judgment as a matter of law "'when the evidence permits only one reasonable conclusion and the conclusion is contrary to that reached by the jury.'"  *Lakeside-Scott v. Multnomah Cnty.*, 556 F.3d 797, 802 (9th Cir. 2009) (quoting *Ostad v. Or. Health Scis. Univ.*, 327 F.3d 876, 881 (9th Cir. 2003)).   Although the court must draw all reasonable inferences in favor of the prevailing party, "a reasonable inference 'cannot be supported by only threadbare conclusory statements instead of significant probative evidence.'"   *Id.* (quoting *Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 680-81 (9th Cir. 1985)).   "[W]hen the jury could only have relied on speculation to reach its verdict," judgment as a matter of law ("JMOL") is appropriate.  *Id.* at 803.

Defendants moved for JMOL under Rule 50(a) on several grounds prior to the submission of the case to the jury.[2]  *See* Dkt. 621; Trial Tr. 3165:10-3170:9, 3174:2-11 (Oct. 21).  Defendants hereby renew that motion pursuant to Rule 50(b).[3]

---

[2] Unless otherwise noted, the rules referenced herein are the Federal Rules of Civil Procedure.

[3] The arguments herein correspond to the initial JMOL motion as follows: (1) the insufficiency of evidence to show that sales of LCD panels took place in same market as sales of finished products, made in Dkt. 621 at 1-3, is addressed in part IV, *infra*; (2) the insufficiency of the evidence to satisfy the requirements of the FTAIA, Dkt. 621 at 5-7, is addressed in part V; (3) the insufficiency of the evidence to prove that Costco paid overcharges or was otherwise injured, Dkt. 621 at 7-8, is addressed in part III; (4) the effect of the exclusion of evidence of pass-on under *Royal Printing*, Dkt. 621 at 12-13, is addressed in part VI; and (5) the insufficiency of the (footnote continued)

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ                      -4-

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

27217974.2

B.      **Motion for New Trial**

A motion for new trial is appropriate to address claims "'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'"  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).  In deciding a Rule 59 motion, the Court must "'weigh the evidence as [the court] saw it, and [] set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence.'"  *Id.* (quoting *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990)).  "[T]he absolute absence of evidence to support the jury's verdict makes refusal to grant a new trial an error in law."  *Id.* (alteration incorporated; internal quotation omitted).

A motion for a new trial under Rule 59 is properly included as an alternative to a motion for judgment as a matter of law.  Fed. R. Civ. P. 50(b).

III.    **THE JURY COULD NOT REASONABLY HAVE FOUND THAT COSTCO PAID OVERCHARGES OR WAS OTHERWISE INJURED**

A.      **Costco Had to Prove That It Suffered an Injury to Its Business or Property As a Result of Defendants' Conduct**

This Court instructed the jury that, to prevail on its price-fixing claim, Costco had to prove "that the conspiracy proximately caused Costco to suffer an injury to its business or property."  Dkt. 622 at 22 (Inst. No. 20).  Explaining this requirement, the Court instructed:

> "An injury to business or property is an economic loss sustained in a commercial interest or venture.  An injury to business or property is 'proximately caused' by the conspiracy if an act in furtherance of the conspiracy directly and in a natural and continuous sequence produces, or contributes substantially to producing, the injury.  In other words, a defendant is responsible only if it was a member of a conspiracy whose price fixing was a direct, substantial and identifiable cause of the injury that Costco claims to have suffered."  *Id.* at 31 (Inst. No. 26).

evidence to prove the participation of certain conspirators, Dkt. 621 at 8-11, is addressed in part VII.  The remaining ground asserted in the JMOL motion, that the evidence was insufficient to show that Costco's vendors were direct purchasers, Dkt. 621 at 3-5, relates to issues addressed by the Court in its Bench Trial Order.

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ                    -5-
27217974.2

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

These instructions were consistent with the fundamental requirement that a plaintiff show causation and injury-in-fact in order to pursue an antitrust claim.  "In order to recover treble damages, [the plaintiff] must prove actual causation that it has been harmed by the defendants' infraction of the antitrust laws with 'reasonable certainty.'"  *Mid-West Paper Prods. Co. v. Cont'l Grp., Inc.*, 596 F.2d 573, 584 n.43 (3d Cir. 1979).  Costco cannot avoid the requirement of proving the fact of injury by conflating it with the relaxed standard of proof allowed with regard to the amount of antitrust damages, or by arguing that the jury could simply infer injury based on Defendants' conduct.  *See Flintkote Co. v. Lysfjord*, 246 F.2d 368, 392 (9th Cir. 1957) ("the fact of injury must first be shown before the jury is allowed to estimate the amount of damage); *Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1493-94 (8th Cir. 1992) ("The relaxed standard of proof with regard to the amount of antitrust damages does not apply . . . to the plaintiff's burden of proving fact or causation of antitrust injury.").[4]

### B.   Costco Failed to Show That It Paid Any Overcharges

#### 1.   The Evidence Was Insufficient to Show the Source of the LCD Panels in Costco's Purchases

The disconnect at trial between Defendants' conduct and Costco's alleged harm began with Costco's failure to establish with any certainty that LCD panels manufactured by Defendants or co-conspirators were incorporated into the finished products purchased by Costco. Costco buyer Claudine Adamo testified that Costco did not keep track of who made the panels in its electronics and that the maker of the panel was a "non-issue."  Trial Tr. 2857:3-2858:8 (Oct. 20).  She could not recall ever knowing which entity manufactured the LCD panels in Costco's products.  *See id.*  Geoff Shavey, Costco's live representative in court, similarly did not always know which company made the panels. He testified that he heard "in meetings" that some of

---

[4]Defendants reserve the right to argue on appeal that their more expansive instructions regarding the nature of the required injury should also have been given, *see, e.g.*, Dkt. 545 at 194 (Defs.' Proposed Inst. No. 66), and to raise additional instructional issues if appropriate, but for purposes of this motion accept the Court's formulation as correct.

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ                    -6-

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

27217974.2

1   Costco's vendors were affiliated with panel makers, but he did not and apparently could not

2   testify that those panel makers in fact manufactured the panels sold by their affiliated vendors to

3   Costco.  *See* Trial Tr. 1400:12-1401:15 (Oct. 6).

4           Dr. Bernheim's testimony did not bridge this gap.  Although Dr. Bernheim claimed to

5   have identified the source of some of the panels in Costco's products in his work on the case, he

6   did not testify as to the results of that work at trial.  Costco introduced none of the documents Dr.

7   Bernheim said he reviewed.  *See id.* at 558:13-15 (Sept. 25) ("in some cases, it was possible,

8   through the records of the companies, to actually trace where the panels came from for particular

9   products.  And when that was possible, that's what I did.").  Rather than identify the sources of

10  any of the panels in Costco's purchases, Dr. Bernheim testified only that the alleged conspirators

11  accounted for "generally at least 85 percent, often higher" of the panel market."  *Id.* at 437:9-11

12  (Sept. 24).[5]

13          Evidence that the conspiracy had a large market share is insufficient as a matter of law

14  for a jury to conclude that a plaintiff necessarily purchased conspirator products or suffered

15  injury.  The MDL court, while recognizing the large market share held by the conspiracy, made

16  it clear that plaintiffs must provide evidence *over and above* market share percentages to show

17  that each plaintiff in fact bought products containing panels manufactured by a conspirator.  *See*

18  MDL Dkt. 4683 at 4-5 (Ex. 1)[6] (allowing indirect purchaser class to proceed where plaintiffs

19  "developed a sufficient methodology for identifying potential class members" and "have been

20  able to determine the panel source for numerous products" through methodologies apart from

21  market share).  In *re Static Random Access Memory (SRAM) Antitrust Litigation*, No. 07-md-

22  01819 CW, 2010 WL 5071694 (N.D. Cal. Dec. 7, 2010), the court similarly rejected an argument

23

---

24  [5] The Bench Trial Order accurately summarized the deficiencies of the record with respect to the
    pathway taken by the LCD panels in the products Costco purchased:  "As to the hundreds of

25  millions of dollars of other finished products at issue in this case, there is no direct evidence as to
    how the panels within them moved from their manufacture, to assembly into finished products,

26  and then to Costco."  Dkt. 681 at 7.

27  [6] All references to "(Ex.)" are exhibits filed concurrently herewith, unless otherwise noted.

28

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ                    -7-

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

27217974.2

1   that a purchaser of a SRAM finished product could proceed simply because he had purchased "at

2   a time when Defendants had a significant market share," and refused to allow certain plaintiffs to

3   represent the class where they offered no evidence that Defendants supplied the SRAM in their

4   products.  *Id.* at *14.

5        Just as class certification cases do not allow courts to conclude that a particular plaintiff

6   purchased price-fixed products simply because the conspirators dominated much of the market,

7   the jury here was not entitled to assume that the products that Costco purchased necessarily

8   contained conspirator-made LCD panels.  Such an inference would be particularly unreasonable

9   in this case in light of the undisputed evidence that a significant number of LCD panels were

10  made by non-conspirators.  *See* Trial Tr. 558:10-559:1, 587:25-588:6 (Sept. 25) (Dr. Bernheim's

11  acknowledgement that some finished LCD products purchased by Costco contained panels not

12  associated with the conspiracy).  Although Costco ultimately reduced its damages claim to

13  exclude a percentage for non-conspirator panels, it offered no evidence that its overall line-up of

14  LCD products had ever mirrored the LCD conspirators' market share.  To the contrary, the

15  record showed that Costco's sales strategy was to stock only a limited number of items within

16  each product category.  This approach, described by Costco buyer Geoff Shavey as a "limited

17  SKU count," meant that Costco would offer 32 to 35 types of televisions, "whereas electronics

18  retailers would have . . . 200."  *See* Trial Tr. 1395:5-14 (Oct. 6).  During the relevant time frame,

19  Costco offered even fewer than 32 to 35 television models containing LCD panels, as the SKU

20  count included plasma and CRT models.  *Id.* at 1395:17-23.  For other electronics products, the

21  SKU counts were even more limited (with approximately eight types of laptops, six types of

22  bundled desktop products, and five types of standalone monitors).  *Id.* at 1395:24-1396:4.  On

23  this record, the jury had no way to determine whether Costco's restricted LCD product offerings

24  contained LCD panels that came primarily from conspirators or non-conspirators.

25       Costco was not without options in trying to overcome this hurdle.  As discussed above,

26  Costco could have elicited testimony from Dr. Bernheim with respect to at least some of the

27  panel sources.  Or Costco could have employed and laid out for the jury one or more of the

28

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ                    -8-

27217974.2

methodologies used by plaintiffs to persuade the MDL to allow the indirect purchaser class to proceed. *See* MDL Dkt. 4683 at 4-5 (Ex. 1) (plaintiffs used information obtained in discovery "to determine the panel source for numerous products"; a "brand-model" method "to determine whether a given product used a defendant-made panel"; and supply chain information that "computes the likelihood that a given product contains a defendant-manufactured panel"). Instead, Costco chose to ignore the issue altogether during the evidentiary portion of the trial.  In closing argument, Costco's counsel then claimed, with no evidentiary basis, that "90 percent of the panels in the products that Costco bought from those six vendors came from conspirators" and left it at that.  Trial Tr. 3428:25-3429:2 (Oct. 22).

### 2. The Evidence Was Insufficient to Show the Price-Fixing of LCD Panels Inflated the Prices of the Finished Products

Even assuming that Costco either proved, or was not required to prove, that the LCD products it purchased contained conspirator-manufactured panels, the jury could not reasonably have found that Costco was injured based on the evidence presented at trial.  Costco's claim that it was damaged relied entirely on the econometric model created by Dr. Bernheim.  This model ignored the prices actually paid by Costco and calculated damages based only on the number of units Costco purchased, multiplied by an industry-wide average panel overcharge.  In Dr. Bernheim's own words:  "when [I] computed this value of LCD panels contained in finished products, [my] damages [model] take[s] the number of units, and [] multipl[ies] it by that global industry-wide price that [I] computed for the panels."  Trial Tr. 653:2-8 (Sept. 25).  By definition, Dr. Bernheim's model was not designed to, and did not, consider whether Costco in fact paid the panel overcharges he calculated.

Costco tried to distract the jury from this deficiency in the model by repeatedly referencing the dollar value amount of its LCD product purchases from the six vendors at issue, as if that had some relevance to the amount of claimed damages.  *See, e.g.*, Trial Ex. 5550 (Ex. 2) (containing slide from Bernheim testimony showing over $1 billion in purchases, divided among the six vendors, and separate slide showing damages, again by vendor); Trial Tr. 344:2-9 (Sept.

DEFENDANTS' COMBINED MOTIONS FOR JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ                    -9-
27217974.2

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

23) (Costco's counsel argued in opening that Costco purchased "$1 billion worth" of products from certain companies and that its damages were "a bit under 5 percent of what Costco paid for those particular products").  Dr. Bernheim, however, had to concede that the total amount Costco spent on finished products played no part in his analysis and did not affect his damages calculation.  Trial Tr. 642:4-14 (Sept. 25).  As a specific example, Dr. Bernheim testified on cross-examination that the $1,500,000 in damages assigned to the $93,000,000 in purchases Costco made from JVC "would be identical" even if it had bought "exactly the same units for $50,000,000."  *Id.* at 644:25-645:11.  In fact, Dr. Bernheim conceded that, under his methodology, if Costco "had purchased the same number of units" for "nothing," he would still have calculated exactly the same $1,500,000 in damages.  *Id.* at 645:12-13, 18-19.

Numerous examples of Dr. Bernheim's calculations with respect to specific Costco purchases illustrated that Dr. Bernheim mechanically assigned damages based on unit purchases and an industry-wide panel overcharge rate, without regard to the amount Costco actually paid. He stuck to this method *even when the resulting damages amounts were higher than the total price Costco paid for the finished products*.  For example, Dr. Bernheim:

- Calculated $1,265.24 in damages for Costco's purchase of 96 Toshiba monitors, when Costco purchased all of them for a total of 96 cents ($0.01 each).  Trial Tr. 649:10-650:5 (Sept. 25) & Trial Ex. 5540 (Ex. 3);

- Calculated damages of $495.15 for three Philips monitors that Costco obtained for free.  Trial Tr. 646:11-649:9 (Sept. 25) & Trial Ex. 5536 (Ex. 4); Trial Ex. 5539 (Ex. 5); and

- Calculated $106,705.02  in damages for 600 TVs that Costco purchased for a total of $52,650, meaning that the damages were more than twice the total price paid for the products.  Trial Tr. 650:6 -651:15, 652:18-653:1 (Sept. 25) & Trial Ex. 5541 (Ex. 6).

The complete disconnect between Costco's damages calculation and the amount Costco actually paid is all the more remarkable because it was by Costco's own doing.  Costco

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ
27217974.2
-10-

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

1    successfully moved to exclude any evidence as to whether any of the overcharges were passed

2    on from its vendors to Costco in the prices of the finished products it paid—so-called "upstream

3    pass-on" evidence.  Dkt. 516 at 4-5; Dkt. 569 at 2-6.  Costco made this motion even though the

4    MDL court specifically required plaintiffs to introduce "evidence that defendants illegally raised

5    the prices of their TFT-LCD panels, *and that retail prices increased as a result*" in order to

6    dispense with proof of panel-by-panel impact.  MDL Dkt. 4848 at 5-6 (Ex. 7); *see id.* at 2

7    (indirect plaintiffs will first "prove that the conspiracy resulted in higher prices for defendants'

8    customers").  Dr. Bernheim, perhaps recognizing the hole Costco had dug for itself, tried to

9    explain why his methodology nonetheless allowed a finding that Costco was injured even though

10   his model had nothing to do with, and did not measure, overcharges Costco actually paid.  When

11   Dr. Bernheim testified that the next step in his analysis was to multiply damages based on the

12   industry average "by an average pass-through rate to get the best estimate of the overall

13   damages," this Court, in accordance with its ruling on Costco's own upstream pass-on motion,

14   granted Defendants' motion to strike the response.  Trial Tr. 653:2-13 (Sept. 25); *see also id.* at

15   651:19-652:7.

16        On this record, the jury had no reasonable basis to infer that Costco suffered any injury.

17   Numerous courts have held that a regression model such as that offered by Dr. Bernheim

18   assumes that injury has occurred before calculating damages; the model itself cannot establish

19   the underlying fact of injury in the first instance.  *See* MDL Dkt. 4848 at 7 (Ex. 7) (plaintiffs'

20   regression "model cannot be used to prove one of its basic assumptions," i.e., class-wide harm);

21   *In re Plastics Additive Antitrust Litig.*, No. 03-CV-2038, 2010 WL 3431837, at *16 (E.D. Pa.

22   Aug. 31, 2010) (where, "[b]y [the expert's] own admission, his industry-wide regression results

23   . . . do not show . . . that each and every class member . . . paid a higher price than they would

24   have paid absent a conspiracy," the regressions do not constitute proof of classwide impact)

25   (internal citations and quotation marks omitted).

26        In *In re Optical Disk Drive Antitrust Litigation*, 303 F.R.D. 311 (N.D. Cal. 2014), the

27   court rejected the use of a regression model to establish injury to direct purchaser plaintiffs:

28

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ

-11-

27217974.2

1   "Whatever utility such an approach might have in calculating a damages total, it cannot serve to

2   establish that all (or nearly all) members of the class suffered damage as a result of defendants'

3   alleged anti-competitive conduct.  The regression analysis offered by [the expert] assumes the

4   very proposition that the DPPs are now offering it, in part, to show." *Id.* at 321.  While the

5   model generated an overcharge of "about 11.48 percent in the aggregate . . . nothing in the

6   regression methodology attempts to show that all or nearly all purchasers were overcharged in

7   that amount, or in any amount at all." *Id.*; *see also Mercedes-Benz USA, Inc. v. Coast Auto.*

8   *Grp., Ltd.*, 362 F. A'ppx 332, 335 (3d Cir. 2010) (affirming summary judgment for defendants

9   where plaintiff failed to establish fact of injury and expert testimony on damages did not

10  consider plaintiff's actual data).

11          In sum, Costco's only evidence of damages was put on through Dr. Bernheim's

12  testimony, and Dr. Bernheim could not and did not testify that the overcharges on LCD panels

13  were passed on to Costco or that Costco in fact paid the overcharges his model estimated.

14  Costco's decision to avoid showing that it in fact paid inflated panel prices means that it showed

15  no injury at all.[7]

16  **IV.     COSTCO DID NOT ESTABLISH THAT ITS INJURY OCCURRED IN THE
           SAME MARKET IN WHICH COMPETITION WAS BEING RESTRAINED**

17          Even if Costco had shown some type of injury, the evidence was insufficient to establish

18  Costco's standing to recover under the Supreme Court's decision in *AGC*.  *AGC* requires the

19  courts to "evaluate the plaintiff's harm, the alleged wrongdoing by the defendants, and the

20  relationship between them." *AGC*, 459 U.S. at 535. A plaintiff must show not only that it was

21  injured but that its injury "is of the type the antitrust laws were intended to prevent." *Am. Ad*

22  *Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1055 (9th Cir. 1999); *see* Phillip E. Areeda

23

24  [7] The arguments made in this motion apply equally to Costco's claims under Washington's
25  antitrust laws, codified in the Consumer Protection Act ("CPA"), RCW 19.86.030.  *See, e.g.,*
    *Lubic v. Fid. Nat'l Fin., Inc.*, No. C08-0401 MJP, 2009 WL 2160777, at *5 (W.D. Wash. July
26  20, 2009) ("The state legislature has decreed that courts interpreting the CPA are to 'be guided
    by final decisions of the federal courts . . . interpreting the various federal statutes dealing with
27  the same or similar matters.'").

28

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ                                    -12-

27217974.2

& Herbert Hovenkamp, Antitrust Law ¶ 337(a), at 83 (3d ed. 2007) (in addition to showing injury in fact, private antitrust plaintiff must "connect the alleged injury to the purpose of the antitrust laws").

In the Ninth Circuit, the requirement of antitrust injury means that the plaintiff must prove that it "suffered its injury in the market where competition is being restrained." *Am. Ad Mgmt.*, 190 F.3d at 1055, 1057.  "In other words, the party alleging the injury must be either a consumer of the alleged violator's goods or services or a competitor of the alleged violator in the restrained market." *Eagle v. Star–Kist Foods, Inc.*, 812 F.2d 538, 540 (9th Cir. 1987); *see Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*, 241 F.3d 696, 704-05 (9th Cir. 2001) (holding that hospitals harmed by tobacco companies had suffered harm in a different market from the nicotine delivery market and therefore had failed to demonstrate antitrust injury).

It was undisputed that Costco was not a participant in the LCD panel market, as it was neither a "consumer" of LCD panels nor a "competitor" of the LCD panel manufacturers.  In analyzing whether two products are in the same market, "the focus is upon the reasonable interchangeability of use or the cross-elasticity of demand between the [products]." *Bhan v. NME Hosps., Inc.*, 772 F.2d 1467, 1470-71 (9th Cir. 1985).  Panels and finished products like TVs or notebooks are not interchangeable products.  Costco offered no evidence that the different products are reasonable substitutes for one another.  *See, e.g.*, *Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1196 (N.D. Cal. 2008) (whether products are part of same market depends on whether "consumers view those products as reasonable substitutes for each other").

It is also undisputed that Costco did not allege, and had no proof of, a conspiracy to fix the prices of the finished products Costco actually purchased.  Dkt. 556-5 at 4-12, 21 (stating, in response to numerous discovery requests, that "Costco admits that it has no evidence that the conspirators entered into agreements to fix, raise, or maintain the prices for *LCD products themselves*.") (emphasis added).  The MDL court allowed Costco and other plaintiffs to survive summary judgment on the question of antitrust injury under *AGC* solely on the understanding that they would prove that the market for LCD panels and the markets for finished products were

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ
27217974.2
-13-

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

1    "inextricably linked."  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109,

2    1123 (N.D. Cal. 2008)[8]; MDL Dkt. 4301 (Ex. 8); Dkt. 293; MDL Dkt. 9144 (Ex. 9).  In denying

3    those motions, the MDL court specifically relied on allegations that these plaintiffs "purchased

4    TFT-LCD products directly from cartel members at supra-competitive prices as the result of a

5    conspiracy to fix prices," 586 F. Supp. 2d at 1118, and that "changes in the prices paid by direct

6    purchasers of LCD panels *affect prices paid by indirect purchasers of products containing LCD

7    panels*, *id.* at 1123 (emphasis added).

8           The MDL court rulings denying Defendants summary judgment on the *AGC* issue did not

9    mean that Costco conclusively established that the LCD panel and finished product markets were

10   inextricably intertwined.  Costco did not move for, and the MDL court did not grant, summary

11   judgment on this issue.  To the contrary, the MDL court specifically noted that "there are factual

12   questions about the relevant market" and that there was a factual dispute about whether a panel

13   overcharge was "traceable" to a finished product.  586 F. Supp. 2d at 1123-24.  But, as discussed

14   above, once Costco got to trial, it purposefully ignored the need to prove the critical elements in

15   the MDL court's analysis, i.e., that price-fixing in the panel market affected the prices that

16   Costco's vendors paid or that the overcharges were "traceable" to the finished products Costco

17   purchased.  Instead, Dr. Bernheim based his damage calculations on the median panel prices paid

18   in the panel market without regard to what Costco actually paid.  Trial Tr. 643:2-644:5 (Sept.

19   25).  And Costco's success in excluding upstream pass-on evidence meant that the record

20   provides no basis for assuming or inferring that pass-on even occurred, let alone for determining

21   the extent to which Costco actually paid overcharges.

22

23

24   _____

25   [8] The Ninth Circuit has not endorsed this looser "inextricably linked" approach.  *See In re
     Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 536 F. Supp. 2d 1129, 1140-42
26   (N.D. Cal. 2008) (observing that Ninth Circuit had never endorsed such a broad theory and
     finding that buyers of computers had not properly alleged standing based on purchases of
27   allegedly price-fixed DRAM).

28
DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ
27217974.2
-14-

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

1    Because Costco did not show that it "suffered its injury in the market where competition

2    is being restrained," judgment must be entered in favor of Defendants. *Am. Ad Mgmt.*, 190 F.3d

3    at 1057.[9]

4    **V.    THE JURY COULD NOT REASONABLY HAVE FOUND THAT COSTCO'S
           CLAIMS WERE PERMITTED UNDER THE FTAIA**

5

6        Costco's failure of proof also requires that the verdict be set aside under the FTAIA.

7    Congress enacted the FTAIA in 1982 to limit the scope of federal antitrust laws.  The FTAIA

8    places "*all* (nonimport) activity involving foreign commerce outside the Sherman Act's reach."

9    *F. Hoffmann-LaRoche Ltd. v. Empagran S.A.*, 542 U.S. 155, 162 (2004) (emphasis in original).

10   Unless the conduct involves "import trade or import commerce" with foreign nations, a plaintiff

11   alleging a Sherman Act violation involving foreign conduct must prove that such conduct had "a

12   direct, substantial, and reasonably foreseeable effect" on U.S. commerce that "gives rise" to the

13   plaintiff's claim.  *See* 15 U.S.C. § 6a.

14       This Court interpreted the "import commerce" and "domestic effect" components of the

15   FTAIA and instructed the jury that it could only find an "impact on domestic commerce" if

16   either:

17           "1) The panels or products were sold in a transaction between a member
             of the conspiracy and a customer in the United States. [OR]

18           2) The panels or products were sold by a member of the conspiracy
             outside the United States to a customer outside of the United States, and the sale

19

20   _____

21   [9] Defendants included the question whether Costco established its antitrust standing in the
     JMOL, *see* Dkt. 621 at 1-3, and submitted a jury instruction on the same market requirement, *see*

22   Dkt. 545 at 174.  However, this Court has previously concluded that standing is a question of law
     for the court to decide.  *See, e.g.*, Dkt. 681 at 2; *see also AGC*, 459 U.S. at 535 n.31 ("Harm to

23   the antitrust plaintiff is sufficient to satisfy the constitutional standing requirement of injury in
     fact, but the court must make a further determination whether the plaintiff is a proper party to

24   bring a private antitrust action."); *Bubar v. Ampco Foods, Inc.*, 752 F.2d 445, 449 (9th Cir. 1985)
     ("It is apparent that determination of standing is a question of law, defining the limits to which

25   private treble damage actions may be brought for injuries caused in fact by the violation of the
     antitrust laws.").  Defendants therefore believe that the Court may properly determine whether

26   Costco established its standing under *AGC* as a matter of law.  *Lujan v. Defenders of Wildlife*,

27   504 U.S. 555, 561 (1992) (explaining plaintiff's trial burden).

28

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ                          -15-

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

27217974.2

had a direct, substantial, and reasonably foreseeable effect on later sales to a customer in the United States.  An effect is 'direct' if it has an immediate impact on the later sales, which is to say that the impact does not depend on uncertain developments.  An effect is 'substantial' if it has a significant impact on the later sales.  An effect is 'reasonably foreseeable' if a reasonable person or corporation making the sale would have foreseen its effect on the later sales."

Dkt. 622 at 30 (Inst. No. 25).  On this record, no reasonable jury could have found that Costco's claims fell within either of the above provisions.

A.    **Costco Did Not Prove Any Transactions Between a Member of the Conspiracy and a U.S. Customer**

The evidence indisputably failed to show "a transaction between a member of the conspiracy and a customer in the United States."  Costco conceded that it did not purchase LCD panels directly from defendants or any other alleged conspirators.  Trial Tr. 1400:7-14, 1405:18-22 (Oct. 6).  The Verdict Form did not ask the jury to find that Costco's vendors were themselves conspirators, and Costco did not object on this ground or request that those vendors be included.  As discussed above, Costco conceded prior to trial that it had no evidence that the finished products were themselves price-fixed, *see* Dkt. 556-5, and it presented no such evidence to the jury.

There being no evidence of any "transaction between a member of the conspiracy and a customer in the United States," the jury could not have found that the "import commerce" exclusion set forth in the first part of the Court's instructions applied here.  Dkt. 622 at 30 (Inst. No. 25).

B.    **The Evidence Was Insufficient to Satisfy the Domestic Effects Exception**

Costco also failed to introduce sufficient evidence to satisfy the "domestic effects" exception to the FTAIA. The Ninth Circuit defines the "direct effect" component of this exception to mean that the effect "follows as an immediate consequence of the defendant's activity." *United States v. LSL Biotechnologies*, 379 F.3d 672, 680 (9th Cir. 2004).  An effect cannot be "direct" where it depends on "uncertain intervening developments."  *Id.* at 681; *see United States v. Hui Hsiung*, 778 F.3d 738, 758-60 (9th Cir. 2015).

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ                    -16-
27217974.2

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

In denying Defendants' motion for summary judgment on certain of Costco's damages under the FTAIA, this Court relied on Costco's assertion that the "'direct, substantial, and reasonably foreseeable effect' of Defendants' foreign conduct is to raise the prices of finished products." Dkt. 575 at 9-10; *see* Dkt. 503 at 14-17. While recognizing the possibility "that any impact on the price of the finished product will be indirect," this Court observed that "Costco intends to present evidence that the sale of commodity panels to finished product manufacturers *directly*—as an immediate consequence not depending on uncertain developments—increased the cost of finished products." Dkt. 575 at 10. The Court expressed "no opinion on whether Costco can succeed in that endeavor" but found "no basis to stop it from attempting to do so at trial." *Id.*

This Court's analysis was directly in line with the MDL court's reasoning in denying summary judgment motions earlier in the LCD panel litigation. In the Indirect Purchaser Plaintiff Class action, the MDL court specifically relied on the plaintiffs' "theory of domestic effect" that "[t]he increased price of the [LCD panel] components caused the prices of the finished products in the United States to increase." MDL Dkt. 3833 at 17 (Ex. 10). The MDL court concluded: "If this effect is not 'direct,' it is difficult to imagine what would be." *Id.*[10]

---

[10]In *Hui Hsiung*, a criminal case arising out of the LCD price-fixing conspiracy, the Ninth Circuit concluded that the evidence supported application of the FTAIA's import commerce exclusion. *See* 778 F.3d at 754-56, 760. Although not necessary to its decision, the Court then considered whether the government had also established a sufficiently direct effect on commerce to meet the "domestic effects" exception to the FTAIA. Based on witness testimony and other evidence purportedly linking the price-fixing of LCD panels to "increased prices to customers in the United States," the court found that the evidence was sufficient to uphold the conviction under the domestic effects prong. *Id.* at 759-60.

Here, Costco affirmatively moved to exclude any and all evidence that could potentially show that the fixing of the panel prices increased the prices of finished products sold to customers in the United States. Having done so, Costco cannot now argue that there is evidence from which the Court could infer that finished product prices paid by anyone, let alone Costco, were inflated by the LCD panel overcharges. In any event, the *Hui Hsiung* court only evaluated whether there was a direct effect "on the United States market" that would allow a criminal conviction, not whether particular customers or plaintiffs had established the element for purposes of allowing them to recover damages. *See id.* at 759.

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ                    -17-

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

27217974.2

1    As discussed above, Costco did not live up to its expected showing of a direct effect on

2  finished product prices.  Costco affirmatively moved to exclude evidence that the increased price

3  for LCD panels was passed on in the prices of finished products.  As such, there was no basis for

4  the jury to find that finished products were sold to Costco at illegally inflated prices.  Trial Tr.

5  651:19-652:7 (Sept. 25).  Consequently, the jury could not reasonably have found that the

6  conspiracy had a "direct, substantial, and reasonably foreseeable effect on later sales to a

7  customer in the United States."  Dkt. 622 at 30 (Inst. No. 25).[11]

8  **VI.   *ROYAL PRINTING* DID NOT RELIEVE COSTCO OF THE OBLIGATION TO**
9  **     PROVE ANTITRUST INJURY AND/OR AN EFFECT ON DOMESTIC**
   **     COMMERCE**

10    Costco skated through the trial without giving the jury a basis for finding the critical

11  elements of injury-in-fact or antitrust standing and without showing that Defendants' conduct

12  had a domestic effect under the FTAIA.  The Ninth Circuit's decision in *Royal Printing* did not

13  and could not excuse Costco from these requirements:  (1) *Royal Printing* did not address the

14  situation where the plaintiff never purchased the price-fixed product; (2) *Royal* Printing was

15  decided three years before *AGC* and does not affect the showing required for antitrust standing;

16  and (3) *Royal Printing* was decided two years before the FTAIA was enacted and did not

---

[11] The recent decision on the claim of another LCD panel plaintiff, Motorola Mobility LLC, similarly illustrates the "remarkable dearth of evidence from which to infer actual harm to" an LCD plaintiff that disavows any showing that the price-fixing of the panels caused injury further down the distribution path.  *See Motorola Mobility LLC v. AU Optronics Corp.*, 775 F.3d 816, 821 (7th Cir. 2015).  Like Costco, Motorola relied on the expert opinion of Dr. Bernheim to support its damages claim.  Judge Posner described Dr. Bernheim's testimony as "discuss[ing] only the damages that Motorola's foreign subsidiaries [i.e., foreign companies] incurred from having to overpay for LCD panels.  He made no attempt to estimate the increase in the price paid by [American-based] Motorola for finished cellphones."  *Id.* at 824.  The court pointed out that Motorola had originally claimed that "it paid more for cellphones" as a result of the conspiracy but that "[h]ow the overcharge may have affected Motorola's cellphone business because of the component price fixing was a path that Motorola stepped off of after the pleadings."  *Id.* at 823.

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ                        -18-

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

27217974.2

1  consider the FTAIA's requirement that, in cases involving foreign commerce, a plaintiff show a

2  "domestic effect" as an element of a Sherman Act claim.[12]

3      A.    *Royal Printing's* Upstream Pass-On Analysis Does Not Apply to a
       "Component" Case

4

5      In *Royal Printing*, the plaintiff sought to recover damages based on its purchases of paper

6  products that were the subject of a price-fixing conspiracy.  The Ninth Circuit allowed the printer

7  to proceed as a direct purchaser under the ownership/control exception with respect to its indirect

8  purchases of price-fixed paper products from wholesalers controlled by the price-fixers.  *See* 621

9  F.2d at 327 (allowing plaintiff to proceed on "suit against the manufacturers of the products it

10  purchased" from a specific subsidiary and specific division owned by two of the defendants).

11  The court found that it was "agreed that this paper was manufactured by other appellees," *id.* at

12  324, and that conspirators could be sued on a theory of joint and several liability, *id.* at 327.  In

13  that context, the court allowed the plaintiff to dispense with a showing that the wholly owned

14  subsidiaries or divisions who sold the price-fixed products passed on the full amount of the

15  overcharge.  *See id.* at 327-28.

16      A key distinction between Costco's situation and that of the printer in *Royal Printing* is

17  that Costco purchased finished products allegedly containing price-fixed components, rather than

18

---

19  [12] Defendants recognize this Court must follow *Royal Printing* if it applies to this case.  For
    appellate purposes, however, Defendants renew their position that in light of *Kansas v. Utilicorp*

20  *United, Inc.*, 497 U.S. 199 (1990), the Ninth Circuit's decisions in both *In re ATM Fee Antitrust
    Litigation*, 686 F.3d 741, 757 (9th Cir. 2012), and *Royal Printing* are inconsistent with *Illinois
    Brick* and should not be followed.

21
    *Illinois Brick* sets forth the bright line rule that indirect purchasers such as Costco do not have

22  standing to bring Sherman Act claims.  *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 730-33
    (1977).  In *Utilicorp*—decided 13 years after *Illinois Brick*—the Supreme Court explained that its

23  "stated decision not to carve out exceptions" to the bar on indirect purchaser actions meant just
    what it said:  There would be no new exceptions and it would be an "unwarranted and

24  counterproductive exercise to litigate" otherwise.  *Utilicorp*, 497 U.S. at 216-17 (internal
    quotations and citations omitted).  Because the control exception articulated in *Royal Printing* is

25  a creation of Circuit law, Defendants believe the Ninth Circuit should revisit the question of its
    propriety under Supreme Court precedent.  *See Royal Printing*, 621 F.2d at 326 & n.4; *id.* at 327

26  n.8 ("The [*Illinois Brick*] Court was not, however, considering the situation where the direct

27  purchaser is controlled by a co-conspirator.").

28

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ                    -19-

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107
27217974.2

1   the price-fixed LCD panels themselves. However reasonable it may be to assume that an

2   overcharge on a price-fixed products is passed on by a wholly owned subsidiary when the

3   product is not altered or incorporated into another, once the price-fixed component moves into

4   another market that is not price-fixed, that rationale disappears. *See Illinois Brick*, 431 U.S. at

5   735-36, 743-44 (refusing to allow suit by indirect purchasers who argued that overcharges on

6   concrete blocks had been passed on by general contractors to purchasers of finished masonry

7   structures, due in part to the complexities of determining how the overcharge affected prices in

8   different markets).

9         This distinction between the plaintiff's purchase of a price-fixed product and the purchase

10   of a product affected by or containing a price-fixed component is seen throughout the *ATM Fee*

11   decision, which involved a price-fixed "component" in the form of an "interchange" fee charged

12   by the ATM network to its member banks. The plaintiffs alleged that the defendant banks

13   conspired to fix the interchange fee in order to raise foreign ATM fees paid directly by the

14   plaintiffs to the defendants.  Before engaging in the ownership/control analysis that ultimately

15   led the court to find that the plaintiffs were indirect purchasers who lacked standing, the court

16   specifically noted that "the Bank Defendants *pass on the cost of the interchange fees* through the

17   foreign ATM fees." 686 F.3d at 750 (emphasis added).  The court specifically rejected the

18   argument that "conspiring to set a price for the purpose and effect of raising the price at issue

19   equates to fixing that price and makes the payers of the raised price direct purchasers." *Id.* at

20   753.

21         Neither *Royal Printing* nor *ATM Fee* considered what would happen if a plaintiff brought

22   a claim based on its purchase of a non-price-fixed product *without* a concurrent showing of

23   upstream pass-on.  Extending the limited exceptions in those cases to cover this situation would

24   allow exactly what has happened here, i.e., a defendant could be forced to pay damages even if

25   the plaintiff never bought the price-fixed product and never showed that it suffered an injury.

26   There is no authority for expanding *Royal Printing's* upstream pass-on analysis in connection

27   with purchases of price-fixed products to cover plaintiffs who made no such purchases.  *See*

28

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ                     -20-

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

27217974.2

1   *Kansas v. Utilicorp United, Inc.*, 497 U.S. 199, 216 (1990) (courts should not engage "an

2   unwarranted and counterproductive exercise to litigate a series of exceptions" to its rules on

3   antitrust standing).

### B.   *Royal Printing* Does Not Extend to *AGC's* Standing Requirements

5   Under the MDL court's rulings, Costco was allowed to pursue its claims as a finished

6   product purchaser outside the LCD panel market only on the *express understanding* that it would

7   prove the overcharges on the price-fixed panels were passed through to the finished products.

8   *See* part IV, *supra.*  A showing that the price-fixing of the components had an effect on the

9   finished product prices, i.e., that the overcharges were passed on, is a fundamental requirement

10   for antitrust standing under *AGC* that *Royal Printing* had no occasion to address. [13]

11   Defendants anticipate that Costco will argue that *Royal Printing* nonetheless excused it

12   from showing pass-on of the overcharges by its vendors because of this Court's conclusion that

13   those vendors were owned or controlled by conspirators.  Costco would, in effect, have this

14   Court graft *Royal Printing's* "vertical" exception, that allows a plaintiff purchasing a price-fixed

15   product downstream from a wholly owned subsidiary, onto *AGC's* "horizontal" exception,

16   allowing a plaintiff in a different market to sue if the illegal overcharges affected the prices in

17   that market.  But applying *Royal Printing* to allow a plaintiff in the finished LCD product market

18   to recover without showing that overcharges on LCD panels were passed on would undermine

19   the very rationale for allowing the plaintiff in a different market to proceed in the first place, i.e.,

20   that it could and would prove an effect on finished product prices.  Particularly given that *Royal*

21   *Printing* was decided three years before *AGC*, such an extension would further violate the

---

[13] Other courts allowing purchasers of finished products to sue for the price-fixing of components have similarly relied on allegations that the plaintiffs will show an actual effect on finished product prices.  *See In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1098 (N.D. Cal. 2007) (purchasers of computers could sue over restraint in market for graphics processors because processors are "separate components of a computer and . . . any costs attributable to them are traceable through the chain of distribution"); *In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 2d 836, 855 (E.D. Mich. 2014) (purchasers of cars had standing to sue over restraint in market for bearings where plaintiffs contended "they can trace overcharges through the distribution chain").

---

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ
27217974.2

-21-

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

1    Supreme Court's instruction not to expand exceptions to its indirect purchaser rule.  *See*

2    *Utilicorp*, 497 U.S. at 216.

3        **C.    *Royal Printing* Does Not Affect the FTAIA's Requirements**

4        Just as *Royal Printing* did not eliminate the requirement that Costco prove injury and

5    antitrust standing under section 15(a) of the Sherman Act for domestic transactions, it did not

6    eliminate the requirement that Costco prove a domestic effect under the FTAIA.  In *United*

7    *States v. LSL Biotechnologies*, 379 F.3d 672 (9th Cir. 2004), the Ninth Circuit rejected the

8    argument that "the FTAIA merely codified the existing common law regarding when the

9    Sherman Act applies to foreign conduct."  *Id.* at 679.  Rather, the FTAIA created "substantive

10   elements under the Sherman Act in cases involving nonimport trade with foreign nations."  *Hui*

11   *Hsiung*, 778 F.3d at 753; *see id.* at 751.

12       *Royal Printing*, which on its facts involved only domestic conduct, did not address

13   foreign transactions.  The case also predated Congress' passage of the FTAIA, adding the

14   explicit requirement that the plaintiffs show an "effect" of foreign conduct on domestic

15   commerce that gives rise to their claims.  *Royal Printing* allowed certain indirect purchasers to

16   sue for overcharges without determining whether and to what extent the overcharge was in fact

17   passed on to it, because the court found it "intolerable" to "close off every avenue for private

18   enforcement of the antitrust laws in such cases."  621 F.2d at 327.  Whatever the merits of this

19   approach, Congress made exactly the opposite decision in the FTAIA by requiring that, as an

20   element of the claim, a plaintiff show that foreign transactions have a direct effect on domestic

21   commerce in order to give rise to any interest in having U.S. antitrust law enforced at all.

22       Because Costco affirmatively refused to show the "direct effect" of the conspiracy's

23   foreign transactions on "the cost of finished products" that this Court anticipated and the law

24   required, the jury could not reasonably have found that the requirements of the FTAIA were

25   satisfied.  *See* Dkt. 575 at 10.

26

27

28

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ
27217974.2

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

-22-

**VII.   ALTERNATIVELY, THE JURY COULD NOT REASONABLY HAVE FOUND THAT ROYAL PHILIPS AND PANASONIC WERE CO-CONSPIRATORS**

Even assuming Costco had sufficiently shown antitrust injury and could overcome the FTAIA hurdle, the jury could not reasonably have found that Royal Philips or Panasonic participated in the conspiracy.  Because the jury's findings as to these entities account for over $11.7 million of the jury's award prior to trebling, this Court should reduce the verdict and recalculate the judgment accordingly.

**A.   The Evidence Was Insufficient to Show That Royal Philips Participated in the Conspiracy**

The jury awarded $7,347,670 in damages based on Costco's purchases from Philips Electronics North America Corp., a wholly owned subsidiary of Koninklijke Philips Electronics N.V. ("Royal Philips").  Dkt. 628 at 3.  It was undisputed that no representative of Royal Philips ever attended a Crystal Meeting.  Most of Costco's evidence regarding Philips showed only that it was an LCD panel customer, not a panel manufacturer.  *See, e.g.*, Trial Tr. 1589:2-3 (Oct. 7) (Philips used panels for its own production).  Dr. Bernheim conceded that discussions between manufacturers and customers about pricing are "legitimate" buyer-seller communications.  Trial Tr. 441:14-19 (Oct. 8).  Such evidence provides no rational basis for a jury to conclude that a participant in such communications was price-fixing.  *See In re Citric Acid Litig.*, 996 F. Supp. 951, 959 (N.D. Cal. 1998) (price increase communication was "innocuous" where it related to a sale from one party to the other: "the fact that [an alleged conspirator] discussed prices does not necessarily mean that it agreed to fix prices, or that it improperly exchanged price information").

The few documents Costco offered regarding Philips' status as a panel manufacturer related to discussions with Epson personnel during the late 1990s through 2004.  *See* Trial Ex. 22 (Ex. 11); Trial Ex. 114 (Ex. 12); Trial Ex. 389 (Ex. 13); Trial Tr. 1945:12-16 (Oct. 8).  But Epson employee Takato Imai testified, without contradiction, that Epson did not manufacture TFT-LCD panels until sometime *after* the fall of 2004.  *See* Trial Tr. 1943:1-12 (Oct. 8).  Absent evidence that Epson was even making panels before that point, no jury could reasonably find that Philips and Epson personnel were discussing price-fixing of those panels in the earlier years.

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ
27217974.2
-23-

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

1    Indeed, one of the Epson documents that reflected communications with Philips in November of

2    2004 related to an *entirely different product*—STN-LCD panels—which Costco stipulated prior

3    to trial were not part of its damages claim.  *See* Trial Ex. 936 (Ex. 14) (discussing "B/W" and

4    "CSTN" panels only); Stipulation Re Evidentiary Issues, Dkt. 510 ¶ 2.   These documents

5    provided no basis for the jury to conclude that these companies were reaching price agreements

6    on LCD panels.[14]

7            Finally, Costco introduced an internal Sharp email that appears to reflect a meeting that

8    was held with Philips' "monitor division" and a discussion about monitor panel shortages.  The

9    email also reflects that Sharp asked Philips for its demand forecast.  *See* Trial Ex. 788 (Ex. 16).

10   Although the email contains information collected from AUO, CMO, HannStar and TMD, the

11   only specific inference that can be drawn with respect to *Philips* is that the Philips monitor

12   division was a customer of Sharp's.  It is not reasonable for a fact finder to conclude that being

13   mentioned in the same internal email as other conspirators is the basis for a finding of price-

14   fixing.  *See Willis v. Marion Cnty. Auditor's Office*, 118 F.3d 542, 545 (7th Cir. 1997) ("mere

15   scintilla" of evidence not enough to sustain verdict).

16           In light of the clear conflict between Costco's claim that Royal Philips participated in the

17   conspiracy  and  the  undisputed  evidence  that  Royal  Philips'  only  communications  with

18   conspirators occurred before those companies made panels or after Royal Philips became a panel

19   customer, the jury could not reasonably have concluded that Royal Philips was a participant in

20   the TFT-LCD panel conspiracy.

21       **B.     The Evidence Was Insufficient to Show That Panasonic Participated in the
                  Conspiracy**

22

23           The jury awarded $4,421,560 based on Costco's purchases from Panasonic Corporation

24   of North America (PCNA).  This award depended on the finding that PCNA's parent, Panasonic

25

26   [14] Another internal Epson document from the same period discussed only a request for an
     information change and pricing to Amazon, without reference to the specific type of panel

27   technology.  *See* Trial Ex. 924 (Ex. 15).

28
     DEFENDANTS' COMBINED MOTIONS FOR                                    **LANE POWELL PC**
     JUDGMENT AS A MATTER OF LAW                                  1420 FIFTH AVENUE, SUITE 4200
     Case No. 2:13-cv-01207-RAJ              -24-              SEATTLE, WASHINGTON 98101-2338
                                                              206.223.7000 FAX 206.223.7107
     27217974.2

1   Corporation, participated in the conspiracy.  Dkt. 628 at 3; Dkt. 681 at 10.  In closing argument,

2   Costco's counsel cited four documents that allegedly showed this participation: Trial Exhibits 11

3   (Ex. 17), 99 (Ex. 18), 979 (Ex. 19), and 1024 (Ex. 20); *see* Trial Tr. 3424:12-17 (Oct. 22).  None

4   of these documents was generated by Panasonic, and none was sufficient for the jury to conclude

5   that Panasonic participated in the conspiracy.

6        Two of the cited exhibits are internal scheduling emails circulated among LG Display

7   employees in early 2005 that discuss upcoming meetings with Panasonic and multiple other

8   companies.  *See* Trial Ex. 979 (Ex. 19), Trial Ex. 1024 (Ex. 20).  Merely scheduling a meeting is

9   not illegal.  Nothing in the record provides a basis for inferring that these meetings were intended

10  to involve any discussion of pricing or any illegal behavior.  Costco introduced no evidence as to

11  what actually happened at the meetings or whether they even occurred.

12       With respect to Panasonic, Costco also directed the jury to an *internal AUO email* stating

13  that a "consensus has been made among LG, Samsung, CPT, Mitsubishi, and HannStar"

14  regarding 15" panel prices.  *See* Trial Ex. 99 (Ex. 18).  As to Panasonic (then called Matsushita),

15  the email simply states, "From a separate source, Simon learned that Matsushita is ready to give

16  up their 15-inch supply to Viewsonic[] when a price lower than $220 was requested."  *Id*.  In

17  addition to being hearsay, this statement is meaningless.  Costco never alleged that Viewsonic

18  was a conspirator, and it is impossible to tell whether this information came from Panasonic,

19  Viewsonic, or someone else.

20       Costco's remaining piece of Panasonic "evidence" was an internal CPT document

21  prepared by CPT's C.C. Liu after a December 17, 1998 meeting with Panasonic's predecessor,

22  Matsushita.  *See* Trial Ex. 11 (Ex. 17).  The report stated that Matsushita was "not able to follow

23  the price increases" in the market because of "a gap in quality with the mainstream market

24  brand."  *Id.*  Although Costco repeatedly pointed to this document as evidence of Matsushita's

25  supposed participation in the conspiracy, the document on its face addressed only past prices and

26  did not reflect any agreement to fix prices in the future.  Mr. Liu gave undisputed testimony that

27  CPT did even begin manufacturing LCD panels until sometime in 1999.  Trial Tr. 1132:17-22

28

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ                    -25-

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

27217974.2

1   (Oct. 1).  In 1998, CPT had a licensing and distribution agreement with Matsushita.  Trial Tr.

2   1132:17-1133:3 (Oct. 2).[15]  Mr. Liu testified that he attended the December 18, 1998, meeting

3   and that CPT did not in fact fix prices with Panasonic at this meeting.  *See* Trial Tr. 1132:2-5,

4   1133:12-14 (Oct. 1).[16]  There is no contrary evidence.

5          On this record, the jury could not reasonably conclude that Panasonic conspired to fix

6   prices of LCD panels from 1998 to 2006, particularly when other portions of the record refer to

7   Panasonic either as a customer of other TFT-LCD producers or, in at least one document, as a

8   supplier of component parts for TFT-LCD panel makers.  *See, e.g.*, Trial Ex. 1094 (Ex. 24) ("the

9   major customers of Sharp . . . include Toshiba, JVC, Philips, *Matsushita*, etc. . . .") (emphasis

10  added); Trial Ex. 266 (Ex. 25); Trial Ex. 662 (Ex. 26); Trial Ex. 80 (Ex. 27); Trial Ex. 118 (Ex.

11  21); Trial Ex. 281 (Ex. 28) (supplier); Trial Ex. 330 (Ex. 29); Trial Ex. 485 (Ex. 30); Trial Ex.

12  502A (Ex. 31) ("Sharp . . . is even experiencing difficulties supplying to Matsushita . . . .").  The

13  jury's finding that Panasonic participated in the conspiracy cannot stand.

14  **VIII.   THE COURT SHOULD AMEND ITS FINDINGS THAT COSTCO HAD
           STANDING TO SUE**

15

16         Separate and apart from the jury verdict, Defendants respectfully submit that the Court's

17  findings with respect to ownership and control are erroneous and request that the Court amend

18  those findings for the reasons set forth herein.  Amendment of findings is proper when the Court

19  has made "manifest errors of law or fact" or "to prevent manifest injustice."  *See McDowell v.*

20  *Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999); *Houston Gen. Ins. Co. v. St. Paul Fire &*

21  *Marine Ins. Co.*, No. C11-2093-MJP, 2013 WL 4809274, at *1 (W.D. Wash. Sept. 9, 2013).

22  Amendment on these grounds is proper even if the errors required reversal of the judgment.

23  [15] Although the transcript at some points in this discussion says "Mitsubishi," it is clear from the
    context that the parties were discussing "Matsushita."  Costco dropped any claims that

24  Mitsubishi participated in the conspiracy prior to trial.  *See* Trial Tr. 3088:4-9 (Oct. 21).

25  [16] Other exhibits reference Panasonic in its capacity as a panel purchaser negotiating with panel

26  makers on prices which, as discussed above, Dr. Bernheim and the courts agree are legitimate
    reasons for price communications.  *See* Trial Ex. 118 (Ex. 21), Trial Ex. 646 (Ex. 22), Trial Ex.

27  1408 (Ex. 23).

28

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ                    -26-

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

27217974.2

1  *Nat'l Metal Finishing Co. v. BarclaysAmerican/Commercial, Inc.*, 899 F.2d 119, 123 (1st Cir.

2  1990); *see also* 5A James W. Moore, et al., Moore's Federal Practice ¶ 52.11[2] (2d ed. 1996)

3  ("If the trial court has entered an erroneous judgment, it should correct it.").

4  **A.    The Court Should Amend Its Conclusion That Wholly Owned Subsidiaries
       of Conspirators or Conspirators Subsidiaries Were "Controlled" by**

5  **Members of the Conspiracy**

6       Defendants request the Court to amend its conclusion in the Bench Trial Order that

7  wholly owned subsidiaries of conspirators or conspirator's subsidiaries were "controlled by

8  members of a subsidiary."  Dkt. 681 at 11.  In *ATM Fee*, the Court found that an ownership

9  interest of approximately ten percent was "insufficient" to show control for purposes of the

10  exception.  686 F.3d at 757.  Although the court suggested, in dicta, that a majority ownership

11  interest might suffice, it did not decide the issue.  Given the strict limitation on expanding

12  exceptions to *Illinois Brick*, Defendants submit that the legally correct test for application of the

13  ownership/control exception is whether there has been "such functional economic or other unity

14  [between the defendant and the middleman] that there effectively has been only one sale between

15  the defendant and the indirect purchaser."  *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 101

16  (E.D.N.Y. 2012) ("*Vitamin*") (internal quotations omitted).

17       The *Vitamin* court held that the existence of a parent-subsidiary relationship alone is

18  insufficient to satisfy *Illinois Brick*'s owned or controlled exception.  *Id.* ("A plaintiff seeking to

19  gain the benefit of this exception must therefore present facts demonstrating that such unity

20  exists and may not rely simply on the existence of a parent-subsidiary relationship"); *see also*

21  *Jewish Hosp. Ass'n v. Steward Mech. Enters., Inc.*, 628 F.2d 971, 975 (6th Cir. 1980)

22  (ownership/control exception "is limited to relationships involving such functional economic or

23  other unity between the direct purchaser and either the defendant or the indirect purchaser that

24  there effectively has been only one sale").

25       In *Vitamin*, the court found the fact that the alleged conspirator owned 100% of the direct

26  purchaser to be "singularly insufficient" to show that the subsidiary was responsible for the

27  overcharge.  279 F.R.D. at 101-02.  Rather, the relevant inquiry was whether the parent had

28

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ                    -27-

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

27217974.2

1   "such control over the subsidiary that the defendant can be said to have set prices along the chain

2   of distribution." *Id.* at 101 (internal quotations omitted).  Because the subsidiary's "pricing

3   determinations were influenced by market factors such as competition" with other distributors,

4   the court found that the "evidentiary complexities and uncertainties" that led to *Illinois Brick* and

5   *Hanover Shoe* were "present with full force" in the case before it, making "an exception to the

6   direct purchaser rule . . . unwarranted." *Id.* at 101-02.

7         The same problems with the jury's determination that Costco suffered injury arise with

8   the Court's use here of a simple majority ownership rule with respect to Costco's vendors: there

9   is no basis for knowing or assuming how prices were set further down the distribution chain or

10  whether Costco in fact suffered any overcharge.  The functional economic unity test addresses

11  this problem by requiring a showing that the conspirator was effectively able to set prices farther

12  down the chain, a showing that Costco conceded at the outset it would be unable to make and

13  that it did not even attempt at trial.  The Court should therefore amend its findings and hold that

14  under the economic unity test, Costco failed to establish that any of its vendors were controlled

15  by any of the conspirators.

16      **B.    The Court Should Amend Its Conclusion That the Control Exception
                Applied to JVC Even After Panasonic's Equity Interest Declined to Less
17              Than a Majority**

18        At a minimum, Defendants request the Court to amend the finding that the Panasonic-

19  JVC relationship was sufficient to permit Costco to recover damages based on its purchases from

20  JVC.  The jury award of $662,860 in JVC-related damages depended entirely on whether JVC's

21  relationship with Panasonic, once Panasonic was found to be a conspirator, met the

22  ownership/control test.  The parties stipulated, and this Court found, that until July 2007,

23  Panasonic owned between 52% and 53% of JVC.  Beginning in July 2007, Panasonic's equity

24  interest in JVC declined to 36.8 percent. Dkt. 681 at 10.  By October 1, 2008, Panasonic's share

25  in JVC decreased to 24.4 percent.  Dkt. 599 at 6.  This Court concluded that "even though a

26  conspirator no longer controlled JVC after July 2007," there was "no realistic possibility that a

27  former subsidiary of a conspirator would sue over wrongs that took place when the subsidiary

28

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ                           -28-

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

27217974.2

1    was under the control, . . . particularly . . . where a conspirator retained substantial influence over

2    JVC until well after the conclusion of the conspiracy." *Id.* at 12.

3         Defendants respectfully submit that the Court's extension of the ownership/control

4    exception to allow standing even when a conspirator has less than a majority interest in the direct

5    purchaser is directly contrary to the holding in *ATM Fee.* There, the Bank Defendants had at one

6    time controlled the ATM network that set the improper fees but by the time of the lawsuit their

7    interest had declined to approximately ten percent.  The plaintiffs, relying on *Freeman v. San*

8    *Diego Association of Realtors*, 322 F.3d 1133, 1145-46 (9th Cir. 2003), argued that there was

9    still no realistic possibility of suit because of, among other things, the banks' participation as

10   direct purchasers in a conspiracy with the seller to set a cost passed on to the Plaintiffs. The

11   Court made clear that there is no separate exception based simply on the "no realistic possibility"

12   of suit theory: rather, that lack of possibility must arise *because of an ongoing and sufficient*

13   *control* relationship.  *See* 686 F.3d at 757 (in *Freeman*, "the ownership or control of the direct

14   purchasers by the conspiring seller created no realistic possibility of suit").  The court made it

15   equally clear that, although *Freeman* recited the "no realistic possibility" language, "*Freeman*

16   did not create a new variation of the *Royal Printing* exception, because *Freeman* relied on

17   ownership and control to find standing." *Id.* at 756; *see* Dkt. 558 at 9-10.

18        Here, the sum total of the evidence in both the bench and jury trial records consisted of

19   the facts in the stipulation showing Panasonic's declining ownership percentages in JVC and the

20   statement that, by the second quarter of 2008, JVC was "no longer a consolidated subsidiary of

21   Panasonic Corp."  Dkt. 599 at 6.  There was no evidence of any ongoing control by Panasonic

22   apart from its minority interest, *e.g.*, no evidence that Panasonic controlled or dominated the

23   board of JVC, no evidence that it could set prices, and no evidence that any advice it gave would

24   be followed.  *See ATM Fee*, 686 F.3d at 757-58.  By finding that the Panasonic-JVC relationship

25   nonetheless met the ownership/control test, this Court has done exactly what the Ninth Circuit

26   declined to do in *ATM Fee*, that is, "extend the exception . . . to situations where the seller does

27   not own or control the direct purchasers," based on the Supreme Court's admonition not to extent

28

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ
27217974.2

-29-

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

1    the exception "even in rather meritorious circumstances" in order to avoid "undermin[ing] the

2    rule." *Id.* at 757 (quoting *UtiliCorp.*, 497 U.S. at 216).

3         The Court should amend its findings, rule that Costco failed to demonstrate the

4    applicability of the exception with respect to the Panasonic-JVC relationship, and reduce the

5    amount of the judgment accordingly.

6    **IX.    CONCLUSION**

7         For the foregoing reasons, the Court should grant judgment as a matter of law in favor of

8    Defendants or order a new trial.  At a minimum, the Court should grant judgment as a matter of

9    law on the claim that Royal Philips and Panasonic were members of the conspiracy and reduce

10   the damages award accordingly.  Alternatively, the Court should amend its findings with respect

11   to the ownership/control exception and enter judgment in favor of Defendants.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ                    -30-

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

27217974.2

Dated:  July 2, 2015               By: /s/ Susan E. Nash
                                   Brad D. Brian (*pro hac vice*)
                                   Susan E. Nash (*pro hac vice*)
                                   Kyle W. Mach (*pro hac vice*)
                                   Christopher M. Lynch (*pro hac vice*)
                                   Andrew G. Prout (*pro hac vice*)
                                   MUNGER, TOLLES & OLSON LLP
                                   355 South Grand Avenue
                                   Los Angeles, CA 90071-1560
                                   Telephone: (213) 683-9100
                                   Facsimile: (213) 687-3702
                                   Email:    brad.brian@mto.com
                                             susan.nash@mto.com
                                             kyle.mach@mto.com
                                             christopher.lynch@mto.com
                                             andrew.prout@mto.com


                                   By: /s/ Rudy A. Englund
                                   Rudy A. Englund, WSBA #04123
                                   LANE POWELL PC
                                   1420 Fifth Avenue, Suite 4200
                                   P.O. Box 91302
                                   Seattle, WA 98111-9402
                                   Telephone: (206) 223-7000
                                   Facsimile: (206) 223-7107
                                   E-mail:   EnglundR@LanePowell.com


                                   *Attorneys for Defendants LG Display Co., Ltd.,
                                   and LG Display America, Inc.*

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ                    -31-

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

27217974.2

Dated:  July 2, 2015

By: /s/ David C. Lundsgaard
David C. Lundsgaard, WSBA #25448
MILLER NASH GRAHAM & DUNN LLP
Pier 70, 2801 Alaskan Way, Suite 300
Seattle, WA 98121-1143
Telephone: (206) 777-7520
Facsimile: (206) 340-9599
Email: david.lundsgaard@millernash.com

By: /s/ Carl L. Blumenstein
Christopher A. Nedeau (*pro hac vice*)
Carl L. Blumenstein (*pro hac vice*)
NOSSAMAN LLP
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone: (415) 398-3600
Facsimile: (415) 398-2438
Email: cnedeau@nossaman.com
cblumenstein@nossaman.com

*Attorneys for Defendants AU Optronics
Corp. and AU Optronics Corporation
America*

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ                    -32-

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

27217974.2

**CERTIFICATE OF SERVICE**

I certify that on July 2, 2015, I electronically filed the foregoing **DEFENDANTS'**
**COMBINED MOTIONS FOR [1] JUDGMENT AS A MATTER OF LAW (FRCP 50); [2]**
**IN THE ALTERNATIVE, FOR A NEW TRIAL (FRCP 59); AND [3] AMENDMENT OF**
**FINDINGS IN BENCH TRIAL (FRCP  52(b)** with the Clerk of the Court using the CM/ECF
system, which will send notification of such filing to all attorneys of record.

I certify under penalty of perjury that the foregoing is true and correct.

Dated this 2nd day of July, 2015, at Los Angeles, California.


/s/ *Susan E. Nash*
Susan E. Nash (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Email: susan.nash@mto.com

*Attorneys for Defendants LG Display Co., Ltd.,*
*and LG Display America, Inc.*

DEFENDANTS' COMBINED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW
Case No. 2:13-cv-01207-RAJ                    -33-

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX 206.223.7107

27217974.2