HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

COSTCO WHOLESALE CORPORATION,

    Plaintiff,

v.

AU OPTRONICS CORPORATION, et al.,

    Defendants.

CASE NO. C13-1207RAJ

ORDER

## I. INTRODUCTION

This matter comes before the Court on the Defendants LG Display Co., Inc. and LG Display America, Inc. and AU Optronics Corporation and AU Optronics Corporation America's (collectively, "Defendants") Combined Motions for Judgment as a Matter of Law, in the Alternative, New Trial, and Amendment of the Findings in Bench Trial. Dkt. # 689. Although Defendants have requested oral argument, the Court finds that oral argument is unnecessary. For the reasons set forth below, the Court **DENIES** Defendants' Motions.

## II. BACKGROUND

In brief, this case concerns Plaintiff Costco Wholesale Corporation's ("Plaintiff") claims regarding a conspiracy spanning nearly a decade to fix the prices for thin-film transistor liquid crystal display panels (or "TFT-LCD panels"). Plaintiff, more specifically, claims that it paid too much for finished products that incorporated the price-fixed panels. Following a lengthy jury trial, judgment was entered in favor of Plaintiff

ORDER – 1

and against Defendants for $61,971,040 based on the jury's verdict and this Court's findings of fact and conclusions of law. *See* Dkt. # 682. These motions follow.

### III. LEGAL STANDARD

a. <u>Motion for Judgment as a Matter of Law</u>

Federal Rule of Civil Procedure 50(b) permits a party to renew a motion for judgment as a matter of law previously raised under Rule 50(a) before the case was submitted to a jury. *See E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). "A party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion." *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003) (citing Fed. R. Civ. P. 50 advisory committee note to 1991 amendment).

In ruling on a motion for judgment as a matter of law, a court may not make credibility determinations or weigh the evidence and must draw all reasonable inferences in favor of the nonmoving party. *See Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2005) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149-50 (2000)). Rule 50 permits a court to grant judgment as a matter of law "when the evidence permits only one reasonable conclusion and the conclusion is contrary to that reached by the jury." *Ostad v. Or. Health Servs. Univ.*, 327 F.3d 876, 881 (9th Cir. 2003) (citing *Monroe v. City of Phx.*, 248 F.3d 851, 861 (9th Cir. 2001)).

A court reviews "a jury's verdict for substantial evidence in ruling on a properly made motion under Rule 50(b)." *Go Daddy Software*, 581 F.3d at 961 (citing *Janes v. Wal-Mart Stores, Inc.*, 279 F.3d 883, 888 (9th Cir. 2002)). In other words, a court must sustain a jury verdict so long as there is "evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *See Harper v. City of L.A.*, 533 F.3d 1010, 1021 (9th Cir. 2008) (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)) (internal quotation marks omitted). In contrast, a court reviewing a Rule 50(b) motion "based on grounds not previously asserted in a Rule 50(a) motion" is

ORDER – 2

"limited to reviewing the jury's verdict for plain error." *Go Daddy Software*, 581 F.3d at 961 (quoting *Janes*, 279 F.3d at 888; citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1109 (9th Cir. 2001)).

### b. Motion for New Trial

Federal Rule of Civil Procedure 59(a) provides that a "court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a).

Because "Rule 59 does not specify the grounds on which a motion for a new trial may be granted," courts are "bound by those grounds that have been historically recognized." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). Included among these historically recognized grounds are claims "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Montgomery Ward & Co v. Duncan*, 311 U.S. 243, 251 (1940)). Ordinarily, a "trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Id.* (quoting *Passantino v. Johnson & Johnson Consumer Prods.,* 212 F.3d 493, 510 n.15 (9th Cir. 2000)).

### c. Motion for Amendment

Federal Rule of Civil Procedure 52(b) permits a court to "amend its findings--or make additional findings" and to correspondingly amend the judgment on a party's motion filed no later than 28 days after the entry of judgment. "Motions under Rule 52(b) are primarily designed to correct findings of fact which are central to the ultimate decision; the Rule is not intended to serve as a vehicle for a rehearing." *Crane-McNab v. Cty. of Merced*, 773 F. Supp. 2d 861, 873 (E.D. Cal. 2011) (citing *Davis v. Mathews*, 450 F. Supp. 308, 318 (E.D. Cal. 1978)). Such motions are only "granted in order to correct

ORDER – 3

manifest errors of law or fact or to address newly discovered evidence or controlling case law." *Perez v. State Farm Mut. Auto. Ins. Co.*, 291 F.R.D. 425, 431 (N.D. Cal. 2013) (quoting *ATS Prods. Inc. v. Ghiorso*, No. 10-4880, 2012 WL 1067547, at *1 (N.D. Cal. Mar. 28, 2012)).

## IV. ANALYSIS

### a. Proof of Plaintiff's Antitrust Injury

Defendants begin by arguing that Plaintiff has not shown that it suffered an injury as a result of their conduct. *See* Dkt. # 689 at 12. Defendants argue that the evidence Plaintiff presented at trial was insufficient to show that Plaintiff actually paid any overcharges. *See id.*

The Ninth Circuit has held that the rule "in seeking damages for loss of profits in antitrust cases is that the plaintiff is required to establish with reasonable probability the existence of some causal connection between defendant's wrongful act and some loss of anticipated revenue." *Flintkote Co. v. Lysfjord*, 246 F.2d 368, 392 (9th Cir. 1957). In other words, "[t]o recover treble damages, plaintiffs must prove actual causation—'injury in fact.'" *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1341 n.7 (9th Cir. 1982) (citing *id.*).

Defendants argue that Plaintiff was required to establish with "certainty that LCD panels manufactured by Defendants or co-conspirators were incorporated into the finished products" that Plaintiff purchased. *See* Dkt. # 689 at 13. They argue, essentially, that Plaintiff presented only generalized evidence of increases in finished product prices and improperly relied on Dr. Douglas Bernheim's model. *See id.* Plaintiff, for its part, properly characterizes Defendants' proposed standard as requiring proof of "panel-by-panel impact." *See* Dkt. # 695 at 11 (quoting MDL Dkt. # 4848 at 5).

Defendants propose too strong of a rule in considering antitrust injury. Far from requiring "certainty," courts have held that "[t]o demonstrate injury in fact, it is 'generally sufficient to show with reasonable probability some causal connection between

ORDER – 4

the antitrust violation and [plaintiff's alleged injury].'" *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 608 F. Supp. 2d 1166, 1195 (N.D. Cal. 2009) (quoting *Nw. Publ'ns, Inc. v. Crumb*, 752 F.2d 473, 476 (9th Cir. 1985)). To be sure, "[i]n antitrust cases, a lesser level of proof is needed to support the amount of damages than to support the fact of antitrust injury." *Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1360 (9th Cir. 1986) (quoting *Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282, 1297 (9th Cir. 1984)). But that does not mean that such evidence cannot be shown through circumstantial evidence and inference. *See Sun Microsystems*, 608 F. Supp. 2d at 1197 (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 125 (1969); *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1051 (9th Cir. 1981)). In fact, this Court – and the MDL court – has essentially held as much. *See* Dkt. # 681 at 8-9 (concluding "that the MDL court's rulings relieve Costco of any burden to prove its standing panel-by-panel").

With this in mind, the Court finds that the evidence sufficiently supports the jury's verdict and that much of this evidence is not specifically tied to Dr. Bernheim's regression model. To begin, this Court has already found sufficient evidence showing that Plaintiff purchased products containing price-fixed panels. *See* Dkt. # 681 at 9. Plaintiff presented substantial evidence showing sales of price-fixed panels from conspirators to Plaintiff's vendors. *See e.g.,* Trial Ex. 51, 80, 81, 103, 104, 110, 114, 118, 5613 (Defendants' exhibit showing distribution chain). Multiple witnesses testified to the same effect. *See e.g.,* Trial Tr. Oct. 1, 2014 [Do Hoi Koo Test.] 1080:16-24; Trial Tr. Oct. 16, 2014 [Masahiro Yakota Test.] 2752:24-2753:7. Plaintiff's evidence suffices to show that it purchased products containing price-fixed panels.

Furthermore, Plaintiff presented sufficient evidence to show that increases in panel prices were passed through. For one, several witnesses acknowledged monitoring and sharing information regarding finished product demand and pricing. *See* Trial Tr. Oct. 8, 2014 [Soo Chul Park Test.] 1883:15-19; Trial Tr. Oct. 9, 2014 [Yul Rak Sohn Test.]

ORDER – 5

2085:22-2087:8. Plaintiff also presented evidence showing that the relationship between panel price and finished product prices was well understood. *See* Trial Ex. 221, 239, 318, 398. Furthermore, there was evidence showing that the conspirators supplied information regarding their views on the market for finished products with each other. *See* Trial Tr. Sept. 30, 2014 [Makoto Chiba Test.] 928:1-929:15.

Plaintiff also presented evidence showing that a large portion of the price of the products it purchased was attributable to the price-fixed panels. *See e.g.,* Trial Tr. Oct. 6, 2014 [Geoff Shavey Test.] 1403:15-21; Trial Tr. Oct. 20, 2014 [Douglas Bernheim Test.] 2992:4-2993:19; *see also* Trial Tr. Oct. 16, 2014 [Dean Snyder Test.] 2613:7-16. In fact, there was substantial evidence that the prices of finished products is closely tied to that of panels. *See e.g.*, Trial Tr. Sept. 24, 2014 [Douglas Bernheim Test.] 443:11-445:5.

This evidence was sufficient to show that Plaintiff suffered antitrust injury as a result of Defendants' wrongdoing. Moreover, contrary to Defendants' assertions, this was not evidence merely generalized to the industry as a whole. Dr. Bernheim himself testified that he based his analysis, in part, on tracing where panels came from for particular products that Plaintiff purchased. *See* Trial Tr. Sept. 24, 2014 [Douglas Bernheim Test.] 558:1-559:1. On this record, the jury could have found that it was more likely than not that Plaintiff was injured as a result of the Defendants' conduct.

Because the Court finds that Plaintiff met its burden on this element, it declines to address the Parties' arguments regarding judicial estoppel.

b. Proof of Plaintiff's Antitrust Standing

Next, Defendants argue that Plaintiff did not establish that it had standing to recover under *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*"). Of course, this Court and the MLD Court have already held that Plaintiff had standing to pursue its antitrust claims. *See* Dkt. # 681 at 10; MDL Dkt. # 6931 at 3-4; MDL Dkt. # 9144 at 3-4. And, contrary to Defendants' argument, this Court's ruling was not made in response to a defense summary judgment motion, but

ORDER – 6

on evidence adduced at trial. *See* Dkt. # 681. This Court's ruling in large part was based on its finding that Plaintiff purchased products containing price-fixed LCD panels. *See id.* at 11.

As discussed, *supra*, Plaintiff introduced evidence demonstrating that it purchased products containing price-fixed panels from the members of the price-fixing conspiracy. *See also id.* at 11. Furthermore, as mentioned above, Plaintiff also presented evidence establishing that a significant portion of the price of finished products was related to the price of the price-fixed panels. This evidence suffices to establish Plaintiff's standing, as it shows that the market for LCD products and LCD panels was inextricably linked. This formulation of *AGC* antitrust standing is well established. *See Dang v. San Francisco Forty Niners*, 964 F. Supp. 2d 1097, 1112-13 (N.D. Cal. 2013) (collecting cases and finding that anti competitive effect on market for licensing of sports team logos and trademarks necessarily would affect consumer retail market for apparel bearing these logos and trademarks).

### c. The Foreign Trade Antitrust Improvements Act ("FTAIA")

Defendants next argue that no reasonable jury could have found that Plaintiff's claims were permitted under the FTAIA. *See* Dkt. # 689 at 22.

The FTAIA "lays down a general rule placing *all* (nonimport) activity involving foreign commerce outside the Sherman Act's reach." *F. Hoffman-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 162 (2004). However, the FTAIA "brings such conduct back within the Sherman Act's reach" if "the conduct *both* (1) sufficiently affects American commerce . . . *and* (2) has an effect of a kind that antitrust law considers harmful." *Id.* (quoting 15 U.S.C. §§ 6a(1) & (2)). Furthermore, "[u]nder its plain terms, the FTAIA does not affect import trade." *United States v. Hsiung* ("*Hsiung II*"), 778 F.3d 738, 754 (9th Cir. 2014) (citing *id.*; *Dee-K Enters., Inc. v. Heveafil Sdn. Bhd.*, 299 F.3d 281, 287 (9th Cir. 2002)). In short, the FTAIA does not affect the Sherman Act's coverage of import trade or commerce and excludes nonimport trade or commerce with

ORDER – 7

foreign nations unless the domestic effect exception is met. *See Fenerjian v. Nongshim Co., Ltd.*, 72 F. Supp. 3d 1058, 1080 n.30 (quoting *United States v. Hsiung* ("*Hsiung I*"), 758 F.3d 1074, 1086 (9th Cir. 2014)).

The Court instructed the jury that the Sherman Act applied if "[s]ales of LCD panels whose prices were fixed by the conspiracy or finished products containing LCD panels whose prices were fixed by the conspiracy . . . were sold in a transaction between a member of the conspiracy and a customer in the United States." Dkt. # 622 at 30. Defendants contend that the jury could not reasonably have found this to be the case because vendors from whom Plaintiff ultimately purchased the finished products were separate from the conspirators identified in the verdict. *See* Dkt. # 689 at 23. As Plaintiff correctly notes, however, the instruction permitted the jury to find that the import commerce exception was met based on evidence that conspirators sold their panels or finished products for resale to Plaintiff in the United States. Indeed, some witnesses testified that vendors would purchase finished products from conspirators to specifically be resold to American customers. *See e.g.,* Trial Tr. Oct. 16, 2014 [Masahiro Yakota Test.] 2751:10-2753:7. Indeed, Plaintiff's theory falls well within an accepted theory of the FTAIA import commerce exclusion. Although the Ninth Circuit declined to address the "outer bounds of import trade" in *Hsiung II*, it nevertheless acknowledged that it could include defendants whose conduct was merely *directed* at an American import market. *See Hsiung II*, 778 F.3d at 755 n.8 (citing *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 471 n.11 (3d Cir. 2011)).

Whatever the case, even if the import commerce exclusion did not apply, Plaintiff presented sufficient evidence to show that the domestic effects exception was satisfied. Much of Defendants' argument on this point simply repeats its theory that Plaintiff was required to show specific, panel-by-panel impact. As discussed, *supra*, this Court and the MLD Court have repeatedly rejected such a stringent level of proof.

ORDER – 8

This Court instructed the jury that they could find that the domestic effect exception was met if "[t]he panels or products were sold by a member of the conspiracy outside the United States to a customer outside the United States, and the sale had a direct, substantial, and reasonably foreseeable effect on later sales to a customer in the United States." *See* Dkt. # 622 at 30. Furthermore, for an effect to be "direct," the Court instructed that it must have an "immediate impact on the later sales." *See id.* The jury's finding on this point was well established by the same evidence showing that that the prices Plaintiff paid were directly affected by the conspirators' conduct – i.e., the evidence showing that Plaintiff suffered antitrust injury.

The Ninth Circuit's holding in *Hsiung II* simply reinforces this point. The court there addressed substantially the same conspiracy at issue in this case – manufacturers of TFT-LCD panels conspired to set and stabilize their prices. *See Hsiung II*, 778 F.3d at 743. The court found that sufficient evidence was presented to satisfy the domestic effects exception. *See id.* at 759. The court noted that the evidence showed that "TFT–LCDs are a substantial cost component of the finished products." *Id.* Witnesses testified as to the correlation between panel cost and finished product prices. *Id.* Furthermore, the evidence established that "[i]t was well understood that substantial numbers of finished products were destined for the United States and that the practical upshot of the conspiracy would be and was increased prices to customers in the United States." *Id.* This "constellation of events that surrounded the conspiracy [led] to one conclusion—the impact on the United States market was direct and followed 'as an immediate consequence' of the price fixing." *Id.* Plaintiff presented substantially the same evidence in the instant case, as this Court has already outlined above.

Defendants now assert that in order to meet the "gives rise to" prong of the domestic effects exception, Plaintiff must specifically show that its specific injury arose from the domestic effect of which it complains. *See* Dkt. # 696 at 18. But *Motorola Mobility LLC v. AU Optronics Corp.*, 775 F.3d 816 (7th Cir. 2015), which Defendants

ORDER – 9

cite, dealt with a decidedly different scenario than that here. In *Motorola*, the court found that the effect of anticompetitive conduct on domestic U.S. commerce did not give rise to an antitrust cause of action because "the immediate victims of the price fixing were [Motorola's] *foreign subsidiaries*." *See id.* at 819-20 (emphasis added). The court stressed that "Motorola's subsidiaries are governed by the laws of the countries in which they are incorporated and operate." *See id.* at 820. Because Motorola and its foreign subsidiaries were treated as separate entities for other purposes, the court reasoned that they should be similarly treated in applying the FTAIA. *See id.* As such, there was no domestic effect – the harm was suffered in the foreign subsidiaries' countries. *See id.*

But Plaintiff did not make its purchases through foreign subsidiaries as Motorola did. It purchased the finished products from U.S. vendors who, in turn, purchased from conspirators. The domestic effect – the increased prices as a result of the cartel's price fixing – was felt by Plaintiff entirely in the U.S. Additionally, the increased prices that Plaintiff paid for the products containing fixed-price panels was, of course, specific to Plaintiff. The domestic effects exception was satisfied.

Finally, Defendants urge this Court to find that Plaintiff's claim does not survive under Washington's Consumer Protection Act ("CPA"). *See* Dkt. # 696 at 18. Given that the Court has already found that Plaintiff's claims survive application of the FTAIA, it is functionally irrelevant whether the CPA incorporates those same limitations, though Defendants have provided some authority suggesting that it does. *See In re Optical Disk Drive Antitrust Litig.*, No. 3:10-MD-2143 RS, 2014 WL 3378336, at *3 (N.D. Cal. July 10, 2014); *cf. Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*, 241 F.3d 696, 706 (9th Cir. 2001) (citing RCW § 19.86.920) ("Washington courts are directed to interpret the CPA in light of federal court decisions interpreting federal antitrust law").

   d. <u>Plaintiff's Burden of Proving Antitrust Impact</u>

Defendants next argue that Plaintiff's burden in showing antitrust injury, antitrust standing, and domestic effect was not lessened by the Ninth Circuit's holding in *Royal*

ORDER – 10

*Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323, 327 (9th Cir. 1980). *See* Dkt. # 689 at 25. Essentially, Defendants contend that Plaintiff was required to present upstream pass-on evidence showing that the inflated prices for the fixed-price panels was directly traceable to the prices Plaintiff paid for the finished products. *See* Dkt. # 696 at 20.

As this Court has previously ruled, such evidence is ordinarily not permitted pursuant to *Royal Printing* because permitting it "would 'involve all of the evidentiary and economic complexities' that the Supreme Court 'clearly forbade' in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)." *See* Dkt. # 569 at 3. This was because *Illinois Brick* foreclosed both offensive and defensive use of such pass-on theories by imposing a direct purchaser rule that eliminated the problems associated with apportioning overcharges between direct and indirect purchasers. *See* 431 U.S. at 728, 731-33.

First, Defendants urge that the Court should have required Plaintiff to show such upstream pass-on evidence because the instant case involved components rather than finished products. *See* Dkt. # 689 at 26-28. To this end, Defendants cite *In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012), arguing that the Ninth Circuit changed the rule set forth in *Royal Printing*. *See* Dkt. # 689 at 27. But Defendants read too much into *ATM Fee* – the court there did not modify the *Royal Printing* rule. Rather, the *ATM Fee* court mentioned "pass on" just two times, each time simply repeating the plaintiffs' allegations. *See* 686 F.3d at 750, 753. There is simply no indication that *ATM Fee* changed *Royal Printing*'s standard. To the contrary, *ATM Fee* affirms *Royal Printing's* holding that indirect purchasers may sue when a conspiring seller owns or controls the direct purchaser. *See id.* at 749.

Next, Defendants contend that *Royal Printing*'s rule does not extend to *AGC*'s standing requirements or to the FTAIA's exceptions. *See* Dkt. # 689 at 28-29. Consequently, Defendants contend that Plaintiff was required to adduce upstream pass-on evidence to show these requirements. *See id.* Simply put, Defendants argue that Plaintiff was put to a more stringent burden of proof on antitrust standing under *AGC* and to show

ORDER – 11

that Plaintiff's claim fell within the exceptions to the FTAIA. Of course, Defendants do not cite any authority actually standing for requiring separate standards for these elements. This Court sees no reason to do so. *AGC* established a multi-factor test for determining whether a given plaintiff was a proper party to bring a private antitrust action. *See* 459 U.S. at 535, 537-44 & n.1. And the Court in *AGC* was well aware of the standard set forth in *Illinois Brick* and expressly stated that "[t]he same concerns" guided its holding governing standing. *See AGC*, 459 U.S. at 544. There seems little reason, then, that different burdens of proof should apply to *Illinois Brick*'s ownership/control rule and to *AGC*'s standard for antitrust standing. Likewise, this Court finds no reason to deviate from the *Illinois Brick* standard in evaluating whether a party's claims fall within the exceptions to the FTAIA.

e. Sufficiency of the Evidence Regarding Philips and Panasonic

Next, Defendants argue that the jury could not have reasonably found that Philips or Panasonic participated in the conspiracy. Dkt. # 689 at 30. Defendants thus argue that the Court should reduce the jury's award by approximately $11.7 million prior to trebling. *Id.* The Court disagrees. There was sufficient evidence for the jury to find that Philips and Panasonic participated in the conspiracy.

With respect to Philips, Plaintiff presented evidence showing that Philips was exchanging confidential information regarding panels.[1] Several internal Epson documents reflect communications with Philips in October and November 2004 discussing price and future production information. *See e.g.,* Trial Ex. 924 ("With Amazon, the supply schedule is being moved up from January to December. 500k/month.

---

[1] Defendants argue that it was undisputed that Philips never attended a Crystal Meeting. *See* Dkt. # 689 at 30. That is true, but Defendants' expert admitted that physical presence was not necessary to be part of a conspiracy. *See* Trial Tr. Oct. 15, 2014 [Dennis Carlton Test.] 2399:16-2400:9. Furthermore, the MDL Court itself held that parties could be conspirators even without attending the Crystal Meetings. *See In re TFT-LCD (Flat Panel) Antitrust Litig.,* No. 12-CV-4114 SI, 2013 WL 3387652, at *1 (N.D. Cal. July 8, 2013).

ORDER – 12

Q4: $18.75 Q1:$17.75").[2] Additional documents reflect communications between other conspirators and Philips regarding TFT-LCD panels. *See* Trial Exs. 788 (discussing panel shortages and production and demand forecasts); 914 at 2 (explaining that "[p]rice requests from (Ph) for cell sales have become severe" and attaching an email explaining a meeting to discussing methods of reducing "TFT cell costs"); 936 at 3 (discussing "Active" panel quantities); 1056 at 1 (explaining that "Active LCDs" included TFTs). Indeed, as Plaintiff points out, much of this evidence establishes opportunity, method, and actual exchanges of information about non-STN panels. Finally, to the extent that Defendants contend that these exhibits merely show permissible buyer-seller exchanges, the Court disagrees. Many of these documents show impermissible price-fixing – and the jury could well conclude that the referenced discussions with Philips were part of the same scheme.

Likewise, the evidence supports the jury's finding that Panasonic was a conspirator. For one, numerous witnesses (including those who testified to early meetings and exchanges of confidential price information) testified to meeting with Panasonic. *See e.g.,* Trial Tr. Sept. 25, 2014 [Genichi Watanabe Test.] 715:11-18; Trial Tr. Oct. 1, 2014 [C.C. Liu Test.] 1107:8-13, 1108:7-25, 1111:6-10, 1133:4-11 ("Q:You weren't concerned about [Panasonic's] pricing, were you? A: We tried to learn from them."). Other documents indicate that representatives of Panasonic may have met with representatives of other conspirators after 2001. *See e.g.,* Trial Exs. 979; 1024. Additionally, other documents reflect that conspirators had learned Panasonic's willingness to abandon its supply of 15 inch panels to "Viewsonics" if the price dropped below $220. *See* Trial Ex. 99. Given the contents of that communication, the jury could well have inferred that a representative of Panasonic was the "separate source" who

---

[2] This exchange itself provides evidence that Philips could have exchanged price and production information regarding TFT-LCD panels for the same time period as Epson produced such panels. Although Defendants point out testimony that Epson did not produce such panels in fall 2004 (*see* Dkt. # 696 at 22 (citing Trial Tr. Oct. 8, 2014 [Takato Imai Test.] 1942:3-19, 1943:1-12)), this email reflects Philips' information for winter 2004-2005 and spring 2005.

ORDER – 13

provided this information. *See id.* This evidence amply supports the jury's finding that Panasonic was a conspirator.

Because the jury could have reasonably found that Philips and Panasonic were conspirators based on this evidence, the Court need not address Plaintiff's alternative theory based on Philips and Panasonic's ownership/control relationship of other conspirators.

### f. Motion to Amend the Court's Findings of Fact and Conclusions of Law

The final portion of Defendants' Motion is their request that the Court amend its Findings of Fact and Conclusions of Law. *See* Dkt. # 689 at 33. Such motions are typically only granted "to correct manifest errors of law or fact or to address newly discovered evidence or controlling case law." *Perez*, 291 F.R.D. at 431.

Defendants first contend that the Court should amend its conclusion that wholly owned subsidiaries of conspirators or conspirators' subsidiaries were "controlled by members of a subsidiary." *See* Dkt. # 689 at 34 (quoting Dkt. # 681 at 11). Defendants aver that the Court applied the incorrect legal test in reaching this conclusion; rather, they contend that the proper test was expounded by *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 101 (E.D.N.Y. 2012). *See id.* Of course, *Vitamin C* is not binding on this Court and Defendants did not previously raise this argument with this Court, meaning that they are barred from raising it on this Motion. *See Diocese of Winona v. Interstate Fire & Cas. Co.*, 89 F.3d 1386, 1397 (8th Cir. 1996) (citing *Concordia College Corp. v. W.R. Grace & Co.*, 999 F.2d 326, 330 (8th Cir. 1993)) ("Motions to amend a judgment cannot be used to raise arguments which could have been raised prior to the issuance of judgment").

Furthermore, to the extent that *Vitamin C* holds that a parent-subsidiary relationship standing alone may not satisfy the ownership/control exception (*see Vitamin C*, 279 F.R.D. at 101-02), that is not the law of this circuit. The Ninth Circuit held in *ATM Fee* that control may exist through either majority ownership of stock *or* actual

ORDER – 14

control over a corporation's conduct. *See* 686 F.3d at 757 (citing *Weinstein Enters., Inc. v. Orloff*, 870 A.2d 499, 506-08 (Del. 2005); *Kaplan v. Centex Corp.*, 284 A.2d 119, 1220-23 (Del. Ch. 1971)) (analogizing necessary control for application of ownership/control exception to rules governing shareholder duties). Defendants have not identified any error to justify the Court's amendment of its findings.

Defendants next contend that the Court incorrectly found that Panasonic controlled JVC after Panasonic's equity ownership declined to less than a majority. *See* Dkt. # 689 at 35-37. However, the Court also found that there was no realistic possibility that JVC would have sued prior to July 2007 because it was under the control of Panasonic for the duration of the conspiracy. *See* Dkt. # 681 at 11-12. Furthermore, this Court does not believe that *ATM Fee* created a rule categorically precluding standing when a conspirator has less than a majority interest in the direct purchaser. To the contrary, as the MDL Court noted, "the fact that a company's shareholder interest is less than 50% and/or its representation on the board of directors of another company is less than 50% does not necessarily preclude control." MDL Dkt. # 7422 at 5-6. In addition, this Court rejected the Defendants' proposed date-of-suit rule (*see* Dkt. # 558), meaning that the Court's conclusion that there was no realistic possibility JVC would have sued prior to July 2007 sufficiently establishes Plaintiff's right to recover for its purchases from JVC.

## V. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendants' Motions for Judgment as a Matter of Law, in the Alternative, New Trial, and Amendment of the Findings in Bench Trial. Dkt. # 689.

DATED this 3rd day of March, 2016.

*[signature]*

The Honorable Richard A. Jones
United States District Court

ORDER – 15